90 219|
100 571|

## Wytheville.

## DEATON v. TAYLOR.

### JULY 20th, 1893.

1. MINES—*Lease—Forfeiture—Waiver.*—The right to insist upon forfeiture of coal lease for breach of condition subsequent, *held*, waived by the lessor recognizing lessee's right to assign the lease.
2. IDEM—*Royalties—Transportation.*—Lease of coal mine is not forfeited by failure to make the required output or pay royalties, when the lease provides that failure to get transportation shall excuse the making of such output, and transportation was not obtained and the payment of royalties was waived as provided in the lease. 2 Minor, 697.
3. PRACTICE AT COMMON LAW—*Demurrer to Evidence—Joinder in.*—Where it would be the duty of the trial court to set aside a verdict in favor of the defendants, *held*, defendants may properly be compelled to join in a demurrer to the evidence. *Trout v. V. & T. Railroad Co.*, 23 Gratt., 630.

Error to judgment of circuit court of Tazewell county, rendered January 21, 1892, in an action of debt on a note given for the balance due upon the assignment of a mining lease of coal lands, in which action Joseph Taylor was plaintiff and J. A. Deaton and others were defendants. The judgment being for the plaintiff, the defendants brought the case here on writ of error and *supersedeas.* Opinion states the case.

*Henry & Graham*, for plaintiffs in error.

*Chapman & Gillespie*, for defendants in error.

HINTON, J., delivered the opinion of the court.

In May, 1885, the Simmons Creek Coal Company, a corporation chartered under the laws of the State of West Virginia, leased to Joseph Taylor & Co., a firm composed of Joseph Taylor, Michael H. O'Connor, and Thomas O'Connor, a certain tract of coal land lying in Mercer county, West Virginia, for a period of twenty-two years.

By the terms of the lease the buildings and other improvements to be erected by the lessees were to be so located and constructed as to preserve the proper and convenient entry of the Norfolk and Western railroad track, and the lessees were to pay during the continuance of the lease, for royalty as rent, ten cents for each ton of 2,240 pounds of coal mined for any other purpose than the manufacturing of coke, and fifteen cents for each ton of coke made on the premises. It was also provided that sixty days were to be allowed in which to put the works in operation for the shipment of coal, and that for the first year the lessees were to pay a royalty based upon an output of 15,000 tons; and for the second year upon an output of 30,000 tons, and for every year thereafter, during the existence of the lease, an output annually in such quantity, not less than 30,000 tons, unless the lessees are prevented from mining by strikes among the laborers, or failure to get transportation for the coal, as to demonstrate the ability of the lessees to take out the whole body of the coal on said premises within the term. It is further provided that if the lessees fail to make the coal output annually as therein required, or to pay the rents and royalties, then their failure to do either of these things shall work a forfeiture of the lease without any legal proceedings; but that the lessors might waive this forfeiture for non-payment of rents and royalties and pursue the remedies therein provided for the collection of the same.

In August, 1885, Taylor sold his interest in said lease to one Sampson Smith, but subsequently, in the month of November of that year, he purchased the two-thirds interest of the O'Connors.

On the 28th day of August, 1886, Joseph Taylor assigned this two-thirds interest to J. C. Moore, G. T. Deaton, James A. Deaton, and L. T. Atkinson, in consideration of the sum of $2,000, $1,250 of which was paid as it fell due, leaving a note for the balance of $750 still outstanding and unpaid.

In the contract of assignment, Taylor covenants that the lease is free from incumbrances, and that no act of his heretofore performed has or will cause a forfeiture of the same; and the Deatons, Moore, and Atkinson agree that they will take upon themselves and stand to and perform all the covenants set forth in said lease.

The note for the balance of $750, referred to above, not having been paid at maturity, Taylor instituted his action of debt against the surviving obligors, J. A. Deaton, G. L. Deaton, and L. T. Atkinson, and, after three mistrials, recovered a judgment in the circuit court of Tazewell county.

From this judgment the plaintiff in error obtained a writ of error from one of the judges of this court. In the circuit court the defendants, by two special pleas, set up the defences—first, that the plaintiff and the O'Connors had forfeited their rights by their failure to pay the royalties and to make the output of coal required by their contract, and so had nothing to convey on the 28th of August, 1886; and second, that on account of the said forfeiture the Simmons Creek Coal Company entered and took possession of the leased premises and deprived the said defendants of the same. And they insist upon the same line of defence in this court. In brief, the contention of the plaintiffs in error is, that the lessees in the original lease of May, 1885, failed to carry out the covenants of the lease, and that by said failure that lease, by its terms, became absolutely, null, void, and at an end; and, therefore, that Taylor had nothing which he could sell or assign by the contract of the 28th of August, 1886.

At the trial the plaintiff demurred to the evidence, and the

court compelled the defendant to join in the demurrer, and this is assigned as an error by the plaintiffs in error.

Ought this to have been done?

According to our practice either party, plaintiff or defendant, has a right to demur to the evidence, and the other party will be compelled to join therein, unless the case be plainly against the demurrant, and his object seems to be nothing else but delay. But the power of the court to compel a joinder in the demurrer is one requiring the exercise of judicial discretion, and, when exercised, is subject to be reviewed by this court (4 min. pt. 1, m. p. 749). *Trout* v. *Va. & Tenn. R. R. Co.*, 23 Gratt., 630; *Eubank* v *Scott*, 77 Va., 206. In the present instance there was plainly no abuse of the power. There had been three mistrials, and the case certainly was not plainly against the demurrant. The purpose of the demurrant was not to retard but to expedite the trial of the case; and as the evidence was not clearly against him, and there is no doubt as to the facts proved by, or the proper inferences deducible from the evidence, the demurree could not possibly have been prejudiced. Indeed, as will appear in the result, the case was one in which it would have been the duty of the court to have set aside the verdict, if one had been rendered for the demurree, and, therefore, according to the views of Judge Moncure, in *Trout* v. *Va. & Tenn. R. R. Co.*, *supra*, exactly the case in which a joinder in the demurrer ought to be required by the court.

This brings us to the real inquiry in the case, which is this: Had the lease been forfeited before the assignment to the defendant? Now the contract, although dated on the 28th February, 1885, was really executed in the month of May in that year, and according to the deposition of Joseph Taylor, the firm of Joseph Taylor & Co. was ready to ship coal within thirty days from the time the lease was signed, if they had had transportation for the coal. And it appears, from the same deposition, that they had put upon the leased premises over

$3,000 in improvements within the same period. In answer to the second question, the deponent says: " At the time we took the lease the property was all in woods. We cleared or cleaned up enough to make our openings, and for the railroad probably four acres in all. We also made five drift openings and drove them in, say fifty feet each, and timbered the same at a cost of about $50 each. And we also built five log houses, costing $100 each, amounting to $500. And we built five log houses, costing $25 each, amounting to $125. We also built one blacksmith shop, costing $40, and graded 800 feet of railroad at a cost of about $800; 1,200 feet of mining track at a cost of $600; built two dumps to dump the coal out of the mining cars into the railroad cars, costing $50 each. We also had 2,000 mine ties made at a cost of three cents each, amounting to $60. We had ten tons of steel rails at $38 per ton, amounting to $380, and two tons blacksmith iron, costing about $38 per ton, amounting to $76. We also paid $83 railroad freight on the above mentioned steel and iron, and had our mine tracks laid from the dumps to all the drifts; all of which was done before the first of June, 1885." Here the items of expenditure are set forth in detail. Is it possible that the defendants would have failed to disprove them if it could have been done? These improvements, it should be added, were made under the directions of the engineer of the Norfolk and Western Railroad Company, and immediately thereafter " the plaintiff went to Roanoke to try to get the railroad authorities to lay the track, so that coal could be shipped; but at that time, in June, 1885, was told that the track would not be laid until the railroad company had a sufficient deed for the right of way, and this deed was not executed until the 2d October, 1886.

These facts are sufficient to show that prior to the sale to the plaintiffs in error, Taylor & Co. did not have transportation for the coal, and as a consequence could neither make the required output nor be expected to pay the royalties, which latter ground

of forfeiture the Simmons Creek Coal Co. expressly reserved the right to waive, as it seems to have done. And under these circumstances we do not think that the lease was forfeited, especially as the lease provides that there shall be no forfeiture if the failure to make the output should be due to a strike among the laborers, or a failure to get transportation, and "that the parties, evidently meaning the Simmons Creek Coal Company, may waive their forfeiture for the non-payment of rents and royalties," &c., which last provision could only have been put in to emphasize the fact that it was to be optional with the Simmons Creek Coal Company whether the failure to pay the rents and royalties should work a forfeiture or not, for otherwise this provision would have been useless, since a party may always waive a provision made for his benefit.

Formerly there was a distinction between leases which were declared to be void upon the breach of a condition, and such as were only voidable, but that distinction seems to have been overruled by the later authorities. At section 492 of Taylor's Landlord and Tenant, that learned author says : " There was, however, a distinction formerly drawn between leases that were declared to be void upon a breach of condition, and such as were to be voidable only. In case of a lease for lives, if the lessee was guilty of any breach of the condition, the lease was only voidable, although, by its express terms, it was to become thereby absolutely void; and the landlord might waive his right to re-enter, by the acceptance of rent, or of some other act, which amounted to a dispensation of the forfeiture. But, upon the breach of such a condition in a lease for years, the lease became *ipso facto* void, and no subsequent recognition could set it up again. Yet if the condition in such case was merely that the lessor might re-enter, the lease was voidable only, and might be affirmed by acceptance of rent, if the lessor had notice of the breach at the time. But the force of this distinction has been almost, if not quite, abated by the modern decisions, which establish that the breach of a condition making

a lease void upon a certain event, is to make it void at the option of the lessor only, in case where the condition is intended for his benefit, and he actually avails himself of his privilege."

See, also, 2 Minor's Institutes, page 697, where it is said: "A condition avoiding a lease upon a contingency (e. g., the lessee's non-payment of rent), according to the modern authorities, does not render the lease absolutely void, ipso facto, though it be expressly so declared, for that would be to enable the lessee, by his own misconduct, to determine the lease at his pleasure, but it leaves the lessor the option of entering for the breach of conditions or not, at his will; and the lease being thus voidable only, and not void, it is confirmed by the lessor's subsequent acceptance of rent, or other unequivocal waiver of the forfeiture."

And in Tyler on Ejectment, page 312, it is said: "It may be affirmed as a general proposition that whatever acts of the landlord will be a waiver of a forfeiture for non-payment of rent, will be a waiver for any other cause." 1 Pomeroy Eq., sec. 541, and note. And as to what acts may constitute a waiver, see Taylor on Landlord and Tenant, sections 497 and 498. And in the present case, there can be no doubt that the coal company waived its right to insist upon a forfeiture, if there had been any, when it recognized the right of Taylor to make the assignment to the defendants.

Nor are the defendants in a condition to plead any such forfeiture; that neither they nor the Simmons Creek Coal Company ever formally declared or treated this lease as forfeited until the 4th day of January, 1887, long after the defendants had taken possession of the leased premises and had begun to ship coal, is clear from the record. And while nothing appears showing the least want of the utmost good faith on the part of the plaintiff in his transactions with the defendants, it plainly appears that the defendants were fully acquainted with all the facts in relation to the lease before they purchased, and

that they refused to purchase the lease from the plaintiff, Taylor, until they had failed to get a new lease from the Simmons Creek Coal Company itself, and had consulted with the president and other officers of said company with reference to the supposed forfeiture. And after such consultation, and after receiving assurances from the president of the company that all they had to do was to go to work and show their ability to carry out the provisions of the lease, and that no advantage would be taken of any forfeiture or past misconduct on the part of Taylor & Co., they purchased from Taylor his interest in the lease, paid in cash $500, gave their notes for the remainder of the purchase-money, and took possession of the leased premises.

Now, under these circumstances, I repeat, they took possession of the leased premises, went to work, and had actually shipped coal therefrom, and then, after they have quarrelled among themselves, and not before, they abandon their contract, and now seek to visit a *forfeiture of their own creation* upon the plaintiff Taylor. This cannot be done. To permit them to throw the consequences of their own default upon the plaintiff would operate as a fraud upon him, although he seems to have acted with the utmost good faith towards them, and this they are estopped from doing.

After a careful examination of the record, we are satisfied that the judgment of the circuit court of Tazewell county is right, and must be affirmed.

JUDGMENT AFFIRMED.