## Richmond.

KAVANAUGH'S ADMR. v. KAVANAUGH.

NOVEMBER 22, 1900.

Absent, Phlegar, J.*

1. LACHES—*Obscurity of Transaction—Loss of Evidence—Death of Parties.*
   If, from the delay which has taken place, it is manifest that no
   correct account can be rendered; that any conclusion to which the
   court can arrive must at best be conjectural, and that the original
   transactions have become so obscured by time, loss of evidence and
   the death of parties, as to render it difficult to do justice, a court
   of equity will not grant relief.

Appeal from a decree of the Circuit Court of Rockingham
county, pronounced July 1, 1899, in two chancery causes heard
together under the style, respectively, of *Skinner & Co.* v.
*James Kavanaugh,* and *James Kavanaugh & Others* v. *Joseph
Kavanaugh's Admr. & Others.*

*Affirmed.*

The opinion states the case.

*Sipe & Harris* and *O. B. Roller & Martz,* for the appellant.

*Yancey & Haas* and *W. Liggett,* for the appellee.

KEITH, P., delivered the opinion of the court.

Joseph and James Kavanaugh were brothers, and for a long
time residents of the town of Harrisonburg, Va. James had a

*This case was argued and submitted before Judge Phlegar qualified.

wife and four or five children.  Joseph never married.  They
were at one time interested in business together, but dissolved,
James purchasing the Virginia Hotel, and Joseph renting the
" Farmer's Home," in which they kept boarding-houses, with
bar-rooms attached.  James becoming embarrassed, a general
creditors' suit was instituted against him by Skinner & Co. in
1883.  In this suit, there was a reference to a commissioner,
and, upon the coming in of the commissioner's report, it was
ascertained that the Virginia Hotel would rent for a sufficient
sum to pay the liens thereon, amounting to $1,137.  In May of
the year 1882 or 1883—the year being left in some doubt by
the evidence—Joseph Kavanaugh closed his business at the
" Farmer's Home," and took charge of the Virginia Hotel for
the purpose of relieving the embarrassed condition of his
brother.  In September, 1883, there was a decree to rent the
Virginia Hotel, and James Kavanaugh became the renter at
$450 *per annum*, with Joseph Kavanaugh and Timothy Quinlin
as his sureties.  These rental bonds were payable in one and
two years from date, and were paid by Joseph Kavanaugh
about the time of their maturity  There were other orders of
account in the case of *Skinner* v. *Kavanaugh*, and in April,
1889, the commissioner presented what purported to be a final
settlement, which was confirmed by the decree of October,
1889.  A debt which was ascertained to be due to one Gassman
was not paid, and for that cause the case was continued on the
docket until April, 1896, when the clerk entered a rule for the
security of costs, providing that the case should be stricken
from the docket unless the security was given in sixty days.

At the April term, 1897, counsel for Gassman secured an
order reinstating the cause, which recites that it had been in-
advertently stricken from the docket; and again it was referred
to a master to ascertain the real estate of the defendant James
Kavanaugh, whether the Gassman debt was a lien thereon, and

any other liens in the order of their priority, and any other matter any party might deem pertinent.

Joseph Kavanaugh died on the 14th of April, 1896, and his administrator found the rental bonds in the possession of his intestate. Thereupon these bonds were presented to the commissioner in the case of *Skinner* v. *James Kavanaugh*, together with a claim on the part of Joseph's administrator against James Kavanaugh for $1,008, alleged to be due on account of consideration of dower resting upon the Virginia Hotel property, paid by Joseph for James in 1886, and also a debt by account amounting to $1,173. In the meantime, James Kavanaugh, after the death of his brother Joseph, had filed a bill for the settlement of his estate. In the bill, he had presented an account which, as the commissioner states, was proved by several witnesses, and, there being nothing to the contrary, it had been reported, and the report confirmed, directing the administrator of Joseph Kavanaugh to pay to James Kavanaugh $960, with interest. The commissioner disallowed the claim of Joseph Kavanaugh's administrator in the case of *Skinner* v. *Kavanaugh* and reported that the only lien resting upon the hotel property in the hands of James Kavanaugh was that in favor of Gassman.

To this report Joseph's administrator filed sundry, exceptions, and the cause was recommitted to the commissioner, who, at the April term, 1899, filed an elaborate report in which these exceptions are considered and disposed of, as follows:

"A voluminous mass of testimony has been taken by both sides, relating to the condition of accounts between James and Joseph Kavanaugh prior to, at and after the execution and payment of these rental bonds, showing that there were a vast number of transactions between them, whereby, at one time, the one would be the debtor, and the other the creditor, and at another *vice versa.* Your commissioner finds it impossible, to ascertain, after the lapse of time, the true condition of accounts

between them, at any stated period, nor can he undertake now to apply the statute of limitations, as could have been done when these transactions were recent, and could be established with a reasonable degree of certainty as to the age of the several items. It is safe to say that, in the large majority of the transactions referred to, the statute of limitations will apply; only a small number escaping its operation, and they will be accounted for in the adjustment of accounts between them hereinafter."

When he comes to deal with the open account preferred by Joseph Kavanaugh's administrator, he allows a portion of it as a credit upon the decree above referred to, recovered by James Kavanaugh against his brother's estate, reducing it to $481.11 as of April 1, 1899.

There is a mass of irrelevant, inconclusive, and, in some respects, contradictory evidence presented in the record, which it would be idle to discuss. We think it fully sustains the opinion of the commissioner, that it is impossible to ascertain, at present, the true condition of accounts between the estate of James and Joseph Kavanaugh. In this view the Circuit Court concurred, and its decree states, " that by reason of the lapse of time, death of parties, loss of evidence, the loose business methods of the parties, and the obscurity and uncertainty thence ensuing, an accurate or fair settlement of the controverted accounts between Joseph and James Kavanaugh is now impossible; and the court being further of opinion that the staleness of the demands now set up by Joseph Kavanaugh's administrator against James Kavanaugh, and the fact that the same were never asserted by the said Joseph Kavanaugh in his lifetime, or before the decree in these causes at the October term, 1898, precludes the idea that he ever intended to assert such claims."

We are of opinion that the decree of the Circuit Court is in harmony with the well settled law of this State.

As was said by this court in *Harrison* v. *Gibson*, 23 Gratt.

212: " If, from the delay which has taken place, it is manifest that no correct account can be rendered, that any conclusion to which the court can arrive must at best be conjectural, and that the original transactions have become so obscured by time and the loss of evidence and the death of parties, as to render it difficult to do justice, the court will not relieve the plaintiff." *Wisler* v. *Craig,* 80 Va. 29; *Covington* v. *Griffin, ante* p. 124; *Tate's Exor.* v. *Jones, ante* p. 544.

We find no error in the decree appealed from, which is affirmed.

*Affirmed.*