## Wytheville.

### BLISS, GUARDIAN, V. SPENCER.

June 12, 1919.

Absent, Burks, J.

1. APPEAL AND ERROR—*Assignment of Error—No Exception to Commissioner's Report.*—In a suit to compel an accounting by a guardian, the guardian assigned as error the failure of the decree to allow him certain commissions as administrator, which were allowed in his *ex parte* settlement as such administrator. The decree in this particular was based on the master commissioner's report to which no exception was taken by appellant, and, as the disallowance of such commissions does not appear on the face of the report, this assignment of error comes too late under the well-established rule on the subject. Moreover from an examination of the evidence in the record, on which the master commissioner's report and the decree were based, it appeared that there was no error of fact in this assignment of error.

2. GUARDIAN AND WARD—*Expenditures for Ward's Support—Liability of Guardian.*—Although there was no suggestion of any bad faith or turpitude on the part of a guardian in his transactions with his ward, where the evidence established the fact that he abdicated his authority and control over the estate of his ward and the income therefrom and over the conduct of the ward in the matter of expenditures, this constituted a plain dereliction of the very duty which the office of guardian is created to perform; and no guardian can devolve such duty upon his ward, even with the consent of the latter, or upon any other person, or thus escape responsibility for injudicious and unreasonable disbursements in excess of the income of the ward which are made without authority of the instrument under which he acts, if there be such, or, if there be none such, without previous authority of the court.

3. GUARDIAN AND WARD—*Disbursements by Guardian in Excess of Income—Test.*—The test of whether there will be an allowance of credit to a guardian for disbursements by him for the support and maintenance and education of his ward in excess of the income from the estate, is not merely that the guardian has

acted in good faith, but that the disbursements are such as the court would have authorized had application been previously made to it. If they are such disbursements they will be allowed although made by the guardian without previous authority, but not otherwise. And the court in acting on the subject will be guided by its determination of whether the expenditures in excess of the annual income were actually made and by its further determination of whether they were judicious and proper from the standpoint of the interest of the ward.

4. GUARDIAN AND WARD—*Disbursements by Guardian in Excess of Income—Test.*—In the instant case the evidence in the record sustained the conclusion that under the facts and circumstances of the case, the expenditures by the guardian in excess of the income of his ward's estate were improper and injudicious and should not be allowed.

5. GUARDIAN AND WARD—*Expenditures by Guardian for Ward's Maintenance and Education—Expenditure of Whole Income.*— Under section 2603 of the Code of 1904, a guardian acting in good faith has the discretion to expend the whole of the income of the estate of his ward for the "maintenance and education" of the latter. Action in good faith by the guardian in making expenditures for such purposes or either of them is the standard applicable to and is the test of whether there will be allowance of credit therefor in the settlement of his accounts, so long as such expenditures are kept within the ward's income. When the guardian of his own authority breaks in upon the *corpus* of the trust fund for the maintenance or education of his ward, then the test is that referred to in the third syllabus; i. e., that the disbursements are such as the court would have authorized.

6. GUARDIAN AND WARD—*Surplus Income Becomes Part of Principal.*—If there should be an excess of the ward's income for any year over the actual expenditures for the ward's support, the surplus becomes a part of the principal for the succeeding year.

7. EXECUTORS AND ADMINISTRATORS—*Debts of Decedent—Distribution Before Expiration of Twelve Months.*—Under the statute law of Virginia the personal estate (as is also the real estate), of a decedent, is expressly made assets for the payment of his debts. And where there is sufficient personal estate to pay all debts, the administrator, although he may have no actual notice of their existence, takes the risk of personal liability for payment of debts if he distributes the personal estate before awaiting the twelve months period allowed by statute in Virginia for presentation of debts and before then obtaining protection from personal liability therefor by refunding bonds or before such protection is afforded him by order of court under

the statute law in such case made and provided, unless the creditor's laches or other conduct thereafter should bar the demand.

8. DESCENT AND DISTRIBUTION—*Regulation by Sovereign.*—Whatever may be the true solution of the much debated and centuries old question of the nature and origin of the law of succession to property—whether it be a natural right, or one which is the creature of "*juri positivi* merely," as it is regarded by Blackstone—it is a right which all authorities agree may be regulated by the sovereign; and by virtue of the statutes of distribution (which have become wellnigh universal), wherever such statutes exist it has become a right which is vested in the persons entitled to take upon the death of the intestate, subject to such conditions as the statute law may impose upon the devolution of the title.

9. DESCENT AND DISTRIBUTION—*Personal Estate.*—By the statute of distribution of personal estate (section 2557 of the Code of 1904), where a person dies intestate as to his personal estate, his distributees (which include his widow) are entitled to the property after the payment of taxes, expenses of administration and debts of the decedent.

10. DESCENT AND DISTRIBUTION—*Wills—Time for Probate — Unknown and Unrecorded Will.*—There is no statute in Virginia placing any limitation of time upon the probate of a will. Nor, on the other hand, is there any provision of statute in favor of or saving any rights of persons taking personal property under an unknown and unrecorded will, as against distributees, as there is of the rights of persons taking real estate under an unknown and unrecorded will. By section 2547a of the Code of 1904, such a saving of rights in real estate is made for a period of seven years.

11. EXECUTORS AND ADMINISTRATORS—*Time for Distribution of Estate.*—It is the duty of an administrator to distribute the personal estate after the payment of debts. It is also his right so to do. It is out of regard for creditors only that administrators cannot be "compelled" to make distribution of the estate within the year from their qualification. So that where there are no creditors there is nothing in our statute law to forbid an administrator from distributing the personal estate within the year. And the true policy of the law, in the absence of such a statute, would seem to favor a reasonably prompt distribution amongst those entitled under the statute of distributions, rather than a holding of the estate by the fiduciary for the year.

12. EXECUTORS AND ADMINISTRATORS—*Distribution of Estate—Undiscovered Will.*—If an administrator acts with reasonable diligence to ascertain whether a will exists, and when acting with reasonable prudence in that regard, does not think and has

no reasonable ground to think that a will exists, he may safely distribute the estate, so far as persons taking under a then unknown and unrecorded will are concerned, whether it be within the year of, or after the expiration of the year from the qualification.

13. GUARDIAN AND WARD—*Commissions—Effect of Failure of Guardian to Make Statements—Section 2679 of The Code of 1904.*— Under section 2679, Code of 1904, the court will allow commissions to a fiduciary on receipts as to which he is in default under that act, only to the extent that he gives a reasonable excuse for such default.

14. GUARDIAN AND WARD—*Commissions—Effect of Failure of Guardian to Make Statements—Section 2679 of the Code of 1904.*— Where a guardian failed to charge himself with $3,333.33, being a portion of his ward's estate derived from certain stock, but accounted for the dividends he received on six shares of such stock of the value of $3,000, and this was done in good faith, this furnishes a reasonable excuse *pro tanto* for the default of the guardian, but leaves him in default in not charging himself with $333.33 of the said $3,333.33.

15. GUARDIAN AND WARD—*Commissions—Rest Day.*—The commissions to which a guardian is entitled should, of course, be credited as of his rest day at the end of each yearly statement in the settlement of his accounts which is to be made.

16. GUARDIAN AND WARD—*Accounting.*—Since the fixing of a rest day of fiduciaries is within the reasonable discretion of the commissioner settling their accounts and of the court acting thereon, and since the appellant as administrator of the grandfather of his ward treated the funds in his hands as distributable prior to the expiration of the year after his qualification as such, and since the qualification of a fiduciary will be treated as relating back to the beginning of his action as such, when such action antedates his qualification.

*Held:* That a decree fixing the date for the beginning of the account of the appellant as guardian prior to the date of his qualification as such guardian would be approved, where he acted as if he were such guardian prior to his qualification.

17. FIDUCIARIES—*Commissions—Unconverted Property.*—Fiduciaries are not entitled to commissions on unconverted assets which are distributed in kind or which should have been so distributed except under peculiar circumstances, but where a ward in her bill against her guardian for an accounting insisted upon the liability of the guardian for the money value of certain stock, she cannot, when such position is sustained by the court, insist that the guardian should not be allowed commissions on such value on the ground that the guardian had no authority to convert the stock into money.

18. PLEADING—*Inconsistent Positions.*—A litigant may not be allowed to take different and inconsistent positions in the same proceeding, but must abide by his position taken and by the issues made by himself in the pleadings.

19. GUARDIAN AND WARD—*Accounting—Unconverted Property.*— Where specific property of a ward came into her guardian's hands in kind and was not converted into money and was never treated by the guardian or charged to him in his *ex parte* settlements as converted into money, the guardian is not chargeable for the money value of such property.

20. GUARDIAN AND WARD—*Accounts and Accounting—Unconverted Property.*—A guardian is not entitled to any commissions on specific property of his ward not converted into money.

21. GUARDIAN AND WARD—*Accounts and Accounting—Interest on Disbursements by Guardian.*—A guardian is not entitled to interest from date of expenditure on small individual items of disbursements in the yearly statements. It is only when a large sum is disbursed early in the year and when, under the circumstances, it would work an unreasonable hardship upon the guardian not so to do, that interest will be allowed him on any item of disbursement from the date of payment. As to small items of disbursement, no interest should be allowed during the year.

Appeal from a decree of the Circuit Court of Prince Edward county. Decree for complainant. Defendant appeals.

*Reversed in part and affirmed in part.*

The appellee, a ward of the appellant, was plaintiff in the court below and instituted this suit to compel an accounting by the guardian for all income he may have received from the estate of his ward which came, or should have come, into his hands as guardian from the personal estate of the grandfather and of the grandmother of the ward.

The grandfather, S. H. Bliss, died on May 23, 1910, leaving surviving him his widow, Mrs. P. B. Bliss, the grandmother aforesaid; his son, B. M. Bliss, the appellant, and

Phillippa R. Spencer, the appellee, the granddaughter and ward aforesaid, and a personal estate consisting of twenty shares of Farmville mill stock valued in the record at $10,-000, and certain debts due the estate which his administrator promptly collected, and money in·bank, and a horse sold by his administrator, which estate, other than the mill stock, aggregated the gross amount of something over $6,-000 which came as money into the hands of such administrator.

At the time of the death of S. H. Bliss it was thought that he had died intestate and all of his personal estate came into the possession of and was taken in charge by his son, the appellant, B. M. Bliss; and the latter on June 1, 1910, qualified as administrator of such decedent.   Being satisfied that there were practically no debts or demands against the estate, the administrator,·in June and July, 1910, acting in good faith and with ordinary prudence, paid over to the said widow certain sums, and in October, 1910, paid for her certain other sums, on account of her supposed share of the personal estate, as distributee under the statute.   These payments, according to the record, aggregated the net amount of $176.49 in excess of what the widow would have been entitled to receive as income on the life estate passing to her under the will presently to be mentioned.

On October 31, 1910, the said widow died intestate, leaving surviving her the appellee, her grandchild and only distributee under the statute.   The said B. M. Bliss was not her son, but a stepson, being a son of B. H. Bliss by a prior marriage.   Such widow left a small separate estate of her own, which consisted of twelve shares of Planters Bank stock appraised at the value of $696; five shares of Planters Warehouse Company stock appraised at the value of $250; a sewing machine and certain jewelry appraised at the value of $149 and $30 in currency, the total appraised

value of her estate aggregating $1,125. All of this estate came into the possession of said B. M. Bliss and was taken in charge by him upon the death of the widow and he qualified as her administrator in December, 1910, the precise date of such qualification not appearing in evidence. B. M. Bliss, however, acted as administrator of said widow from the time of her death, paid her funeral expenses, nurse for services during last illness of deceased, doctor's bill, some debts of the latter of trifling amounts, expenses of qualification, etc., which, exclusive of commissions as administrator, by July, 1911, aggregated something over two hundred dollars. During this time, B. M. Bliss, as administrator of the widow, collected certain dividends on the said Planters Bank stock and Planters Warehouse stock; did not sell such stock or any of the personal property of her estate to meet the disbursements made by him as aforesaid, but appropriated to himself, to pay the balance due him on such account, two shares of said Planters Bank stock and two shares of said Planters Warehouse stock at their appraised value, aggregating $226.

On September 22, 1911, B. M. Bliss qualified as guardian of his said ward. The record shows, however, that he acted as if he were such guardian from September 1, 1910. The ward, in fact, lived with him in his home and was in his actual custody and control from the death of the said widow, October 31, 1910, until December, 1913, after which she lived with an aunt and her husband, R. W. Garnett, in the same town as that in which the guardian lived, namely, Farmville, Va.

On or shortly before December 4, 1911, the said B. M. Bliss exhibited before the commissioner of accounts of his county, statements of his accounts as administrator of S. H. Bliss, deceased, and also of the said widow with vouchers for his disbursements. The first-named statement covered the period from May 1, 1910, to November 1, 1910, and the

latter statement covered the period from November 1, 1910, to November 1, 1911. The commissioner of accounts, in December, 1911, and January, 1912, respectively, made his reports of the *ex parte* settlements of the accounts of such administrator of both of such estates based on such statements and vouchers, and, there being no exceptions thereto, they were in due course confirmed according to law.

In the *ex parte* settlement of the account of B. M. Bliss as administrator of S. H. Bliss, deceased, the said Farmville mill stock was treated as having been converted into money and the administrator was charged with having received $10,000 as the value thereof. He is credited in such settlement with 5% commissions on such amount along with the same per cent. of commissions on his other receipts. He is also credited with the amounts he paid the widow above mentioned, aggregating $243.91 gross, but being only $176.49 net amount, as aforesaid. Further, B. M. Bliss, as administrator, is credited in such settlement, and B. M. Bliss, as guardian of his said ward, is charged therein not with any part of said Farmville mill stock specifically, but with certain amounts of money as paid to B. M. Bliss, guardian of his said ward, in her right as the only distributee of the said widow.

Thus was the Farmville mill stock treated by the said B. M. Bliss, both in his capacity as administrator and guardian, as having been converted into money.

In the *ex parte* settlement of the account of B. M. Bliss as administrator of said widow, the residue of the bank and warehouse stock aforesaid left after the appropriation by the administrator of two shares each thereof to pay the balance due him, as aforesaid, to-wit, ten shares of Planters Bank stock, three shares of Planters Warehouse stock and said jewelry and sewing machine, together aggregating $879 in value as per the appraisement thereof, is not treated as converted into money, but as "delivered to" and held by the said B. M. Bliss as guardian of his said ward.

Such *ex parte* settlement allowed the administrator 5% commissions on said $879 value of said property, although it was not treated by him nor by such settlement of accounts as having been converted into money.

There are some departures in both of said *ex parte* settlements from the settled rules governing the subject of charging and crediting interest on the debit and credit items of the accounts, but they do not amount to very much as affecting the result of the account, and no issue was made before the court below or is made before us on this subject, so that we need make no further reference thereto.

After the death of said widow, and either before said statements were laid before the commissioner of accounts, as aforesaid, for said *ex parte* settlements or while they were pending before him and certainly before either of the reports aforesaid were made as aforesaid, it was discovered that S. H. Bliss, deceased, had left a will. That will was duly probated on December 19, 1910, and is as follows:

"This is my will. I give my wife 1/3 her life, then to go to my granddaughter *Phillipia,* also *Phillipia* 1000 dollars, balance to my son."

(Signed)   "S. H. BLISS."

Notwithstanding the discovery and probate of said will, the said B. M. Bliss did not seek to have the commissioner of accounts change the statements of said accounts in said *ex parte* settlements in any particular and did not except to said reports, but allowed them to be confirmed in due course, as aforesaid.

The guardian subsequently and prior to this suit laid his accounts as such before the commissioner of accounts for settlement on three occasions only, namely: on September 23, 1912, covering the period from September 1, 1910, to

September 23, 1912; on September 23, 1913, covering the period from September 23, 1912, to September 23, 1913; and on December 20, 1916, covering the period from September 23, 1913, to September 23, 1916. The commissioner of accounts made reports dated, respectively, July 25, 1912; March 12, 1914, and January 1, 1917, of *ex parte* settlements of such accounts of the guardian as based on his statements of such accounts and vouchers, which, after lying in the clerk's office for over thirty days without exception, were confirmed in due course according to law.

It is material to say here only the following concerning these *ex parte* settlements of accounts of the guardian:

(a) They charged the guardian with only $1,000.00 as received from the estate of S. H. Bliss, deceased, and with interest thereon from September 23, 1911, to September 23, 1912. They omitted to charge the guardian with the share of his ward of the money value of the Farmville mill stock, which was $3,333.33, and omitted also to charge the guardian with some $1,665.49 with which he was further chargeable as receipts from the estate of S. H. Bliss, deceased, under the will of the latter. And the commissioner of accounts in the first two guardianship settlements reports that the guardian has in hand as such, six shares of the Farmville mill stock. But the value of the latter was only $3,000.00 as per the value of this stock shown by the record. And the last guardianship settlement aforesaid charges the guardian with dividends on such six shares of stock collected in 1914 (for 1913 and 1914) and for 1915 and 1916. No dividends on such stock are accounted for for the years 1910, 1911, or 1912, and it would seem from the record that none were declared on this stock by the Farmville Mill Company for these years.

It thus appears from the record that the guardian subsequently to his own election to treat the Farmville mill stock as converted into money as aforesaid, attempted to change his attitude in that matter. ·

(b) Such settlements show that the guardian never himself treated the ten shares of Planters Bank stock or the three shares of Planters Warehouse stock or the sewing machine or jewelry aforesaid, derived from the estate of said widow and aggregating $879 appraised value, as having been converted into money, nor was any of it so treated in any of the *ex parte* settlements aforesaid.

(c) Such settlements show disbursements of the guardian for the support and education of the ward considerably in excess of the annual income from her estate in the hands of the guardian which the latter received together with that with which he was legally chargeable and very greatly in excess of the income for which the guardian accounts in such settlements as actually received; so much so indeed that such settlements show about half of the *corpus* of the estate of the ward as having been consumed in commissions and disbursements in the six years from September, 1910, to September 23, 1916.

The bill puts in issue the true construction of said will; is besides, in substance, a bill to surcharge and falsify the said administration and guardianship accounts; and in the latter connection seeks, amongst other things, the following:

1. To hold the guardian accountable for the annual interest of 6% on the share of his ward under said will in remainder after the life estate of her grandmother in the personal estate of S. H. Bliss, deceased, which is reported as cash or money received by B. M. Bliss as administrator per said *ex parte* settlement of his accounts as such administrator, treating the twenty shares of Farmville mill stock as converted into money; in addition to the annual interest of 6% on the said $1,000 legacy.

2. To hold the guardian accountable also for the like interest on the amount reported by and charged the guardian in his first *ex parte* guardianship settlement aforesaid as

"Cash of Mrs. P. B. Bliss, est.," which the bill in substance alleges includes the money value of the twelve shares of Planters Bank stock, the five shares of Planters Warehouse stock, the jewelry and sewing machine, as per its appraised value, as aforesaid.

3. To have the claims of the guardian for expenditures on account of the support of the ward passed upon by the court and all such expenditures disallowed thereby which were not judicious and proper and were in excess of the ward's annual income, and to obtain such other and general relief as the plaintiff may be entitled to in equity in the premises.

There was a master commissioner's report, of date June 3, 1917, made under decree of court. The material portions of such report were as follows:

(a) The report stated that the net amount which the administrator of S. H. Bliss had, before the discovery of the will, paid the said widow as aforesaid, was $176.49, but it did not allow him credit therefor in the settlement of his accounts as administrator of S. H. Bliss, deceased.

(b) The report, in substance, treated the twenty shares of Farmville mill stock, aforesaid, as having been converted into money by the administrator; charged him with $10,-000 as the amount realized therefrom; allowed him 5% commissions thereon, along with the same commissions on other receipts; and reported that, exclusive of the legacy, $4,998.82 was the amount of that portion of the *corpus* of the estate of said ward with which the guardian was chargeable as coming from the estate of S. H. Bliss, deceased, under said will, should the court adopt the construction of such will which it afterwards adopted in the decree under review; and that to be added to this was the $1,000 legacy aforesaid, making a total of such *corpus* of $5,998.82 as derived from the estate of S. H. Bliss, deceased, as aforesaid, for which the guardian should account and that he should be charged with annual interest thereon.

(c) The report allowed the appellant, in the settlement of his accounts as administrator of said widow, the $176.49 net amount of the items of cash paid the latter before the discovery of the will, as above mentioned.

It also allowed the appellant 5% commissions on his receipts as per his *ex parte* settlement as administrator of said widow, including such commissions on said $879 of specific property, amounting to $43.95.

It did not charge the appellant with the above-mentioned total as cash received of Mrs. P. B. Bliss' estate, but only with the appraised value of the property of her estate above mentioned of $1,125; allows the appropriation by the appellant of two shares each of the stock aforesaid to cover his excess of disbursements over receipts, and reported the remainder of such stock, the jewelry and sewing machine of the aggregate value of $879, aforesaid, as constituting all of the ward's estate in the hands of the guardian coming from her grandmother's estate, and reported that the guardian was not chargeable with interest thereon, but only with such income therefrom as to the court should seem reasonable.

(d) That is to say the report is to the effect that the whole of the estate of the ward in the hands of the guardian, if the construction of the will aforesaid were adopted, would be as follows:

Money on which he was chargeable with annual interest ...............................$5,998.82

The specific property aforesaid of which only the bank and warehouse stock yielded any income.   879.00

Total ...................................$6,877.82

The report did not state any guardianship account, merely giving the basis therefor aforesaid.

The appellant filed no exceptions to such master commissioner's report.

The appellee filed certain exceptions to such report which need not be mentioned here except to say they saved certain objections urged by the appellee against the decree under review which will be dealt with in the opinion below.

The decree under review held that the proper construction of the will of S. H. Bliss, deceased, aforesaid, is that the debts of the estate and the costs of administration should first be paid; that one-third of the estate then remaining passed to the widow for life, and at her death passed in remainder to said ward; that from the residue of the estate the $1,000.00 legacy to the ward was to be deducted and that the balance passed to the said B. M. Bliss. The decree approved and disapproved said master commissioner's report in certain particulars: fixed the sum of $250 per annum as a just and reasonable amount for the support and maintenance of the ward from September 1, 1910, to her entrance into the State normal school as a boarder, to-wit, about September 1, 1916, and allowed him an expenditure of $403.51 on said ward from September 1, 1916, to September 1, 1917, as just and reasonable. The decree refused to allow the appellant the said $176.49 paid the widow, as aforesaid, and made certain other provisions with respect to the basis upon which the guardian should settle his accounts before a commissioner in chancery of the court on which are based assignments of error and which raise the questions which are dealt with in the opinion below.

Other material matters of fact are mentioned in the opinion of the court.

*A. B. Armstrong* and *Watkins & Brock,* for the appellant.

*J. Taylor Thompson,* for the appellee.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court.

7

There are five assignments of error by appellant. They will be considered in their order as stated below.

[1]  1. That the 5% commissions which were allowed appellant in his *ex parte* settlement as administrator of S. H. Bliss, deceased, was disallowed by the decree under review—that "when the court came to enter said decree complained of it took as a basis the whole amount of money and other personal property coming into petitioner's hands as administrator and allowed no credit for said commissions."

The decree in this particular was based on the master commissioner's report, to which no exception was taken by appellant and as the disallowance of such commissions does not appear on the face of the report, this assignment of error comes too late under the well-established rule on the subject.

But if we look to the evidence in the record, on which the master commissioner's report and decree were based, we find that there is an error of fact in this assignment of error. The decree under review held that $5,998.82 was the amount of the estate of the ward which came into the hands of the guardian from the estate of S. H. Bliss, deceased. This was the net amount thus derived as per said *ex parte* settlement and as per the master commissioner's report mentioned in the above statement of the case, and was left in the hands of the appellant after allowing him 5% commissions as administrator of S. H. Bliss, deceased, on all of his receipts, including 5% on the $10,000 value of the twenty shares of Farmville mill stock.

Hence, there is no merit in this assignment of error.

2. That the decree, while allowing appellant commissions as guardian, did not allow same until the end of the account in September, 1917, whereas such allowance should have been made at the beginning of the guardianship account, to-wit: in the year 1911.

There is also an error of fact in this assignment of error. The decree expressly provides that the guardian shall "be credited with 5% on the $5,998.82 received from the administrator as of September, 1911."

Hence there is no merit in this assignment of error. But it should perhaps be here stated that it will be seen below in this opinion that we have reached the conclusion, which is hereinafter set forth in detail, that the guardian has forfeited a part of such commissions, under the statute in such cases made and provided.

3. This assignment of error is as follows:

"3rd. That the court, by said decree, has fixed the sum of $250.00 per year as a reasonable and adequate one for the support and maintenance of your petitioner's ward during the years 1911 to 1916, inclusive. Your petitioner submits that the trial court seems to have arrived at these figures arbitrarily, since R. W. Garnett, on page 35 of the record, testifies that he considered $40 the proper amount per month for the support and maintenance of said ward, and Mrs. M. T. Garnett, on page 25 of said record, states that she would say $30 to $35 per month was necessary for the support and maintenance of said ward; that both of these witnesses, uncle and aunt, respectively, of said Phillippa Spencer, were summoned in her behalf and that theirs is the only evidence before the trial court, other than the evidence of this petitioner, which seeks to show the proper amounts necessary for the support and maintenance of said Phillippa Spencer; that taking the lowest figures of Mrs. Garnett, the annual support for the said Phillippa Spencer would be $360, and taking the figures of Mr. Garnett, it would amount to $480. Your petitioner claimed and introduced evidence to show that for a girl of the kind and station of his ward a sum per annum of something like $600, on an average, was not excessive, but necessary and proper; and that all his expenditures in her behalf

were made in good faith and according to his best judgment."

There is no evidence in the record which we have been able to find tending to show that for a girl of the kind and station in life of said ward a sum of something like $600 per annum on an average was not excessive, except the testimony of the guardian, to the effect that he made about that expenditure and his testimony in one place to the effect that he considered such expenditures essential and necessary.

At other places in his testimony, however, the guardian shows that during the whole period from September 1, 1910, he did not exercise any control over such expenditures, except to remonstrate with his ward and at times with her uncle-in-law, Mr. Garnett; that he allowed the ward, a girl of twelve years of age in September, 1910, and who had only reached the age of eighteen years in 1916, to herself control the amount of her expenditures. As he testifies, "She did the buying; I did the paying."

It is true the guardian testifies that he had conversations with his ward "I reckon a hundred times. I have told her she was spending too much and spending it too fast, and I also told her uncle, R. W. Garnett." But he made her no definite allowance to spend at any time; made no effort, after the first year from September, 1910, to keep her expenditures within her income, as he himself admits in his testimony, except to remonstrate, as aforesaid, after the bills were made and when or after he paid them. And during the first year from September 1, 1910, the expenditures were approximately $500.00 and the next year approximately the same amount, so that it is apparent that the effort testified to by the guardian to restrict expenditures the first year of his guardianship, was not substantially different from his action in that regard in succeeding years.

[2] It should be said, in justice to the guardian, that

there is no suggestion in the evidence of the existence of any bad faith or turpitude on his part in all of his transactions. But the testimony of the guardian himself is to the effect that he did not himself regard the expenditures in excess of the income as judicious or proper. And the evidence plainly establishes the fact that he abdicated his authority and control over the estate of his ward and the income therefrom and over the conduct of the ward in the matter of expenditures. Such abdication may have been due to the very affection of the guardian for his ward or to some other cause, but to whatever cause due, it constituted a plain dereliction of the very duty which the office of guardian is created to perform, and no guardian can devolve such duty upon his ward, even with the consent of the latter, or upon any other person, or thus escape responsibility for injudicious and unreasonable disbursements in excess of the income of the ward which are made without authority of the instrument under which he acts, if there be such, or, if there be none such, without previous authority of the court.

[3] Touching the disbursements by a guardian for the support and maintenance and education of his ward in excess of the income from the estate, the test of whether there will be an allowance of credit therefor in the settlement of his accounts, is well established under the statute in Virginia (Sec. 2604 of the Code), as expounded by the decisions of court. That test is not, as claimed by appellant, merely that the guardian has acted in good faith, but that the disbursements are such as the court would have authorized had application been previously made to it. If they are such disbursements they will be allowed, although made by the guardian without previous authority, but not otherwise. And the court in acting on the subject will be guided by its determination of whether the expenditures in excess of the annual income were actually made and by its further deter-

mination of whether they were judicious and proper from the standpoint of the interest of the ward. *Barton* v. *Bowen,* 68 Va. (27 Gratt.) 849, 855; 1 Minor's Inst. (2nd ed.) 473-4.

[4] Therefore, on the question of whether there was error in the decree under review in its allowance of the expenditures aforesaid of only $250 per year from September 1, 1910, to September 1, 1916, and $403.51 from September 1, 1916, to September 1, 1917, we are of opinion that the evidence in the record sustains the conclusion that under the facts and circumstances of this case, such expenditures were injudicious and improper and should not be allowed, to the extent that they annually exceeded the annual income of the ward with which the guardian is chargeable.

It is true that one of the witnesses for appellee, Mrs. Garnett, stated that in her opinion $30 or $35 per month would be a fair amount to support the ward in keeping with the ordinary circumstances of her family, and Mr. Garnett testified that he thought that $40 per month would be a reasonable amount for a young lady situated in the normal school and situated in life as is the said ward; but the testimony of the latter on this subject applies only to the period after September, 1916, and the testimony of both of these witnesses and of the guardian furnished evidence from which the learned and experienced chancellor of the court below, was warranted in forming his own opinion in the premises and he was not, nor are we, bound by the expression of opinion even of witnesses for appellee.

[5] However, it is apparent from the facts mentioned in the statement preceding this opinion, that the annual income of the ward for which the guardian is accountable amounted to over $250 per annum. We are of opinion that under section 2603 of the Code, a guardian acting in good faith has the discretion to expend the whole of the income of the estate of his ward for the "maintenance and educa-

t:on" of the latter. Action in good faith by the guardian in making expenditures for such purposes or either of them is the standard applicable to and is the test of whether there will be allowance of credit therefor in the settlement of his accounts, so long as such expenditures are kept within the ward's income. It is only to the extent that the guardian, of his own authority, breaks in upon the *corpus* of the trust fund for the maintenance or education of his ward, that the standard and test first above mentioned must be applied.

[6] We are, therefore, of opinion that, so far as actually made, the expenditures in question for the respective years from September 1, 1910, to September 1, 1917, to the extent of the net annual income with which the guardian is chargeable for such years, respectively, after deducting lawful charges of administration, should be allowed in the settlement of his guardianship accounts, but no further. Of course, if there should be an excess of such income for any year over such actual expenditures, the surplus becomes a part of the principal for the succeeding year under the well-settled rule on that subject.

The assignment of error under consideration is, therefore, partly well taken.

4. The fourth assignment of error by appellant is that the decree under review did not allow appellant commissions on the whole $10,000 value of the twenty shares of Farmville mill stock to which he was entitled as administrator of S. H. Bliss, deceased.

The same remarks above made concerning the first assignment of error apply also to this.

Hence, there is no merit in this assignment of error.

5. The fifth assignment of error by appellant is that the decree aforesaid did not allow the appellant the $176.49 mentioned in the statement preceding this opinion, being the net amount paid by him in good faith to the said widow on account of her share of the estate of S. H. Bliss, deceased,

as distributee of such estate prior to the discovery of the existence of the will of such decedent.

We are of opinion that this assignment of error is well taken.

[7]   Under the statute law of Virginia the personal estate (as is also the real estate) of a decedent is expressly made assets for the payment of his debts. And where there is sufficient personal estate to pay all debts, the administrator, although he may have no actual notice of their existence, takes the risk of personal liability for payment of debts if he distributes the personal estate before awaiting the twelve months' period allowed by statute in Virginia for presentation of debts and before then obtaining protection from personal liability therefor by refunding bonds or before such protection is afforded him by order of court under the statute law in such case made and provided, unless the creditor's laches or other conduct thereafter should bar the demand.   Sections 2706, 2707, 2708 of the Code; 7 Am. & Eng. Encycl. Law (1st ed.), pp. 318-319, and note 1 and authorities there cited.

[8-11]   Whatever may be the true solution of the much-debated and centuries-old question of the nature and origin of the law of succession to property—whether it be a natural right or one which is the creature of *"juri positivis* merely," as it is regarded by Blackstone—it is a right which all authorities agree may be regulated by the sovereign and by virtue of the statutes of distribution (which have become wellnigh universal) ; wherever such statutes exist it has become a right which is vested in the persons entitled to take upon the death of the intestate, subject to such conditions as the statute law may impose upon the devolution of the title.   7 Am. & Eng. Ency. Law, pp. 346, et seq., and authorities cited.   And, by the statute of distribution of personal estate (section 2557 of the Code), where a person dies intestate as to his personal estate, his distributees

(which include his widow) are entitled to the property af-
ter the payment of taxes, expenses of administration and
debts of the decedent. It is true that there is no statute in
Virginia placing any limitation of time upon the probate of
a will. Nor, on the other hand, is there any provision of
statute in favor of or saving any rights of persons taking
personal property under an unknown and unrecorded will,
as against distributees, as there is of the rights of persons
taking real estate under an unknown and unrecorded will.
By section 2547a of Pollard's Code of Virginia, such a sav-
ing of rights in real estate is made for a period of seven
years. It is the duty of an administrator to distribute the
personal estate after the payment of debts. 7 Am. & Eng.
Encycl. Law, p. 315. It is also his right so to do. 18 Cyc.,
p. 594. It is out of regard for creditors only that adminis-
trators cannot be "compelled" to make distribution of the
estate within the year from their qualification. So that
where there are no creditors, there is nothing in our statute
law to forbid an administrator from distributing the per-
sonal estate within the year. And the true policy of the
law, in the absence of such a statute, would seem to favor
a reasonably prompt distribution amongst those entitled
under the statute of distributions, rather than a holding of
the estate by the fiduciary for the year. Such holding in
such a case as that we have under consideration would be
for his own benefit alone; since it would not be for the pay-
ment of debts, because it is known that none exist or the
fiduciary is willing to take that risk; and not to await the
possibility of the discovery of a will, since, as aforesaid,
there is no statute fixing any period for the probate there-
of, were one discovered, and if that chance is to be elim-
inated, under the law in Virginia as it now stands, the fiduci-
ary could never distribute the estate.

[12] As we think, the duty of an administrator to dis-
tributees under the statute is to distribute the estate with

reasonable diligence; and with respect to distributing the
estate, notwithstanding the possibility of the existence of
an undiscovered will, that possibility always exists; and if
the administrator acts with reasonable diligence to ascer-
tain whether a will exists, and when acting with reason-
able prudence in that regard, does not think and has no
reasonable grounds to think that a will exists, he may safely
distribute the estate, so far as persons taking under a then
unknown and unrecorded will are concerned, whether it be
within the year of, or after the expiration of the year from,.
the qualification. Certainly such must be the rule after the
expiration of such year; otherwise, as above indicated, no
personal estate could ever be distributed without placing a
liability of personal responsibility on such a fiduciary, which
the measure of care and diligence on his part which is fixed
by law (11 R. C. L., p. 140-2), does not warrant; and we do
not feel that there is any principle on which any different
rule can be made applicable within the year.

We come now to consider certain assignments of error by
appellee under rule VIII of this court, which is invoked in
the reply brief for appellee. These assignments of error
will be considered in their order as stated below.

[13]   6. Section 2679 of the Code is invoked by appellee
against the allowance of any commissions to the guardian.

This statute, so far as material, is as follows:

"If any fiduciary wholly fail to lay before such commis-
sioner a statement of receipts for any year, within six
months after its expiration, and though a statement be laid
before the commissioner, yet if such fiduciary be found
chargeable for that year with any money, not embraced in
this statement, he shall have no compensation for his ser-
vices during said year, nor commissions on such money *un-
less allowed by the court.* * * *" (Italics supplied.)

The italicized words were added to this statute in the en-
actment of 1867. Under the statute as it has since stood,

the court will allow commissions to a fiduciary on receipts as to which he is in default under the statute, only to the extent that he gives a reasonable excuse for such default. See authorities cited to Section 2679, 1 Pollard's Code 1904.

[14]  As appears from the statement preceding this opinion, the guardian laid before the commissioner of accounts statements of his receipts for the first three years of his guardianship and for the year September, 1915, to 1916 within six months after his qualification and after the expiration of such subsequent years; but that he failed to do this for the years September, 1913-1914, September, 1914-1915; and that for the years he did settle his *ex parte* accounts as guardian, he did not embrace in his statement some $3,333.33, being the portion of his ward's estate derived from the Farmville mill stock of S. H. Bliss' estate, and some .$1,665.49 derived from other assets of the latter estate. He accounted, however, in the *ex parte* settlements he did make, as it would seem from the record, for the dividends he received on six shares of such stock of the value of $3,000 from September, 1910, up to September 23, 1916. This was done in good faith, as it would seem from the record, and we think furnishes a reasonable excuse *pro tanto* for the default of the guardian under consideration. But that leaves him still in default in not charging himself with $333.33 of said $3,333.33 and with said $1,665.49, or an aggregate of $1,965.49 of the receipts with which he is found chargeable; and the record shows no reasonable excuse for this default or for the failure of the guardian to settle his *ex parte* accounts for the two years, September, 1913-1914, and September, 1914-1915, aforesaid.

We are, therefore, of opinion that the guardian, in the settlements of his accounts, should be allowed no commission on $1.965.49 of the said sum of $5,998.82 with which he is chargeable as derived from the estate of S. H. Bliss, deceased. as aforesaid; and that he should be allowed no

commissions on his receipts for the years September, 1913-1914, or September, 1914-1915, aforesaid.

[15]    The commissions to which the guardian is entitled should, of course, be credited as of his rest-day at the end of each yearly statement in the settlement of his accounts which is to be made.

[16]    In this connection we will say that since the fixing of a rest-day of fiduciaries is within the reasonable discretion of the commissioner settling their accounts and of the court acting thereon, and since the appellant, as administrator of S. H. Bliss, deceased, treated the funds in his hands as distributable prior to the expiration of the year after his qualification as such, and since the qualification of a fiduciary will be treated as relating back to the beginning of his action as such, when such action antedates his qualification, we approve of the statement in the decree under review in its provisions fixing September 1, 1910, as the date for the beginning of the account of the appellant as guardian, and the latter, under the statutory rule on the subject (Sec. 2608 of the Code), should be charged with interest on the $5,-998.82, above mentioned, as received from the estate of S. H. Bliss, deceased, as aforesaid, from September 1, 1910. *Snavely* v. *Harkrader*, 70 Va. (29 Gratt.) 112.    As to the dividend on the ten shares of bank and three shares of warehouse stock derived from the estate of P. B. Bliss, deceased, the guardian should be charged with his receipts of same during each current year of the yearly statements of his accounts, the interest thereon to be debited by charging interest on the yearly balance found in the guardian's hands.

[17, 18]    7. The appellee invokes the rule applied in the case of *Gregory* v. *Parker*, 87 Va. 451, 12 S. E. 801, and the authorities therein cited, against the allowance of any commissions to appellant as administrator of S. H. Bliss, deceased, on the twenty shares of Farmville mill stock, on the ground that the administrator had no authority to convert

that stock into money, since it was not necessary to do so to pay debts of such estate and that he did not in fact convert it into money, but retained it in kind and distributed it in kind between himself and his ward as distributees or devisees of that estate.

The rule invoked is well established, and is a sound and just rule in cases to which it is applicable. It does not permit of commissions being allowed to fiduciaries on unconverted assets which are distributed in kind or which should have been so distributed, except under peculiar circumstances (*Allen* v. *Virginia Trust Co.,* 116 Va. 319, 82 S. E. 104; *Darling* v. *Cumming,* 111 Va. 637, 69 S. E. 940). But the position taken by appellee in the bill in this cause makes such rule inapplicable therein. The bill insists upon the liability of the guardian for the money value of said stock as fixed by the decree under review, and which was also so fixed by the *ex parte* settlement of appellant as administrator of S. H. Bliss, deceased, and by the master commissioner's report in the cause. Appellee is bound to the theory that the stock has been converted into money by the position taken in the bill that the guardian is chargeable with such money value. The appellee, in insisting upon such theory and upon the guardian being so bound, cannot, when such position is sustained by the court, insist that the guardian should not be allowed commissions on such value because of a different theory. A litigant may not be allowed to take different and inconsistent positions in the same proceeding, but must abide by his position taken and by the issues by himself made in the pleadings.

We conclude, therefore, that the assignment of error under consideration is not well taken.

[19, 20] It should be here noted that the bill also seeks to hold the guardian chargeable for the money value of the specific property which came into his hands in kind from the estate of the grandmother of his ward. But the court

below rightly declined to sustain such position of appellee. Such property was not only not in fact converted into money, but was never treated by the guardian or charged to him in his *ex parte* settlements as converted. Moreover, the rule aforesaid applied in the case of *Gregory* v. *Parker* was applicable in such case. The decree under review accordingly denied the guardian any commissions on such specific property, and was correct also in that regard.

[21] 8. There remains but one other matter for our consideration. Appellee urges that certain interest appearing in the *ex parte* settlements of the guardian as allowed him on small items of disbursements, aggregating some $76.77, were improper allowances, and that there should be no such allowance of interest to the guardian in the settlement of his accounts yet to be made.

This position is well taken. It does not appear, indeed, that there is anything in the decree under review which rules against appellee on this point, but since the question is raised, we feel that we should not leave the subject unmentioned. The rule is well settled that a guardian is not entitled to interest from date of expenditure on small individual items of disbursements in the yearly statements. It is only when a large sum is disbursed early in the year and when, under the circumstances, it would work an unreasonable hardship upon the guardian not so to do, that interest will be allowed him on any item of disbursement from the date of payment. As to small items of disbursement, no interest should be allowed during the year. 1 Minor's Inst. (3d ed.), p. 496.

For the foregoing reasons, the decree under review will be reversed in part and in part affirmed, and the cause will be remanded for further proceedings not in conflict with this opinion, with costs to the appellee as the party substantially prevailing.

*Reversed in part and affirmed in part.*