# Wytheville

LYRIC THEATRE CORPORATION, LEXINGTON MOTION PICTURE
CORPORATION AND ISAAC WEINBERG v. B. E. VAUGHAN,
TRUSTEE.

June 10, 1937.

Present, Campbell, C. J., and Holt, Hudgins, Gregory,
Eggleston and Spratley, JJ.

The opinion states the case.

*Hugh A. White, R. Gray Williams, Leo Weinberg* and *J. Sloan Kuykendall*, for the appellants.

*J. M. Perry*, for the appellee.

CAMPBELL, C. J., delivered the opinion of the court.

On the 22nd day of November, 1923, Leo G. Sheridan executed and delivered to B. E. Vaughan, trustee, his deed, whereby he sold, assigned and transferred to Vaughan, trustee, certain property including "all of his interests in the capital stock of New Theatre Corporation (being the corporation which operates the Lyric Theatre in the town of Lexington, from which the same may be identified in the event the corporate name above is incorrect), being about one-fourth thereof," in trust for the sole use and benefit of the First National Bank of Lexington, Virginia.

Sheridan had been a trusted employee of the bank and it is apparent from the record that this deed to Vaughan, trustee, was to make amends, as far as possible, for peculations committed by Sheridan. The record also discloses that for a number of years Sheridan and appellant, Weinberg, had been closely associated in various business ventures in the town of Lexington, as a result of which Weinberg claims to have lost a considerable amount of money.

At the May Rules, 1927, Vaughan, trustee, filed a bill in equity, alleging that by reason of the conveyance of Sheridan to him, he was the owner of an unascertained interest in the Lyric Theatre Corporation and the Lexington Motion Picture Corporation (which, as alleged, had been acquired by purchase from profits derived from the Lyric Theatre Corporation); and that the remaining interests in the corporation were claimed by Isaac Weinberg. The prayer of the bill is that such interest in the corporation be ascertained; that an accounting be had of the profits derived from the business which had been under the exclusive control of Isaac Weinberg.

Weinberg, the Lyric Theatre Corporation and the Lexington Motion Picture Corporation were made parties defendant.

On March 6, 1928, the defendants filed their joint and several answers setting forth the following:

"Defendants aver that it may be true that Leo Sheridan, as set up in the bill, conveyed to B. E. Vaughan, Trustee, all his interest in the capital stock of the New Theatre Corporation, or the Lyric Corporation or the Lexington Motion Picture Corporation, but these defendants deny that the said Leo Sheridan ever had any interest in said corporation, and they deny that, so far as they know, there is any such corporation as the New Theatre Corporation.

"They deny that Leo Sheridan ever owned any stock or interest whatsoever in any of the said corporations and that all of his interest in the capital stock in said corporation was nothing at the time of the making of said deed to the said B. E. Vaughan, Trustee.

"And these defendants deny that they ever had any notice, actual or constructive, of the assignment by the said Leo Sheridan of any interest in stock or otherwise in either the Lyric Theatre Corporation or the Lexington Motion Picture Corporation, and as a matter of fact said Leo Sheridan had no interest in said corporation."

On the sole issue of whether or not Sheridan had an assignable interest in the corporation (claimed exclusively by Weinberg), the court referred the cause to M. W. Paxton, commissioner, to take an account and report upon the ownership of the respective properties. Without setting forth the report of the commissioner and the numerous exceptions thereto, it is only material that the chancellor was of opinion, and so decreed, that at the time of the assignment of Sheridan to Vaughan, trustee, Sheridan was the owner of a two-fifths interest in the capital stock of the Lyric Theatre Corporation, which, by reason of the assignment, became the property of Vaughan, trustee. It was further decreed that Vaughan, trustee, was entitled to whatever interest Sheridan owned in the Lexington Motion Picture Corporation (which interest has not been ascertained), and that the burden was upon

Weinberg, by reason of his exclusive control of the property, to rebut the *prima facie* case made out by complainant as to the acquisition of and profits derived from the conduct of the Lexington Motion Picture Corporation.

Weinberg, the appellant, in the petition for an appeal, assigns twenty-one alleged errors committed by the lower court. However, in the brief of the appellant only four issues are really relied upon.

The record has been examined with meticulous care and the conclusion reached that a *seriatim* discussion of the errors assigned would serve no good purpose. We are in full accord with the conclusion of the chancellor, that Sheridan had an assignable interest in the Lyric Theatre Corporation, as alleged in the bill of complaint. Though flatly denied by Weinberg in his answer and in his testimony as an adverse witness that Sheridan had an interest in the corporation, the proof, we think, fully sustains the holding of the chancellor. In addition to the finding of the master commissioner, approved by the court, that Sheridan did have an interest in the corporation, the parol evidence, we think, is conclusive against the contention of Weinberg.

It appears that the Lyric Theatre before its acquisition by Weinberg and Sheridan was owned and operated by one W. W. Preston. Preston testified in regard to the sale of the Lyric Theatre to Weinberg and Sheridan, as follows:

"Q. Mr. Preston, where do you reside and what is your occupation?

"A. I reside in Sarasota, Florida; my occupation is attorney at law.

"Q. Where did you reside during the years 1917 and 1918?

"A. Up to December 17th, 1917, I resided in the city of Lexington, Virginia. After that date I resided in Sarasota, Florida, until the first day of March, 1918; then in Norfolk, Virginia, March 18th until November, 1920.

"Q. In what business, if any, were you engaged in when you resided in Lexington, Virginia?

"A. I was operating the Lyric Theatre on Main Street in Lexington, Virginia.

"Q. Have you sold, or otherwise disposed of your owner-ship of the Lyric Theatre Enterprise?

"A. In November, 1919, there was a tentative plan and sale of the Lyric Theatre to Leo G. Sheridan and Isaac Wein-berg, whereby a sale was made and Isaac Weinberg purchased twelve and one-half thirty-fifths, and Leo G. Sheridan pur-chased ten thirty-fifths, and I retained twelve and one-half thirty-fifths of the Lyric Theatre; sale price being Thirty Five Hundred ($3500.00) Dollars. Said sale was made with the specific understanding that there was to be a corporation formed known as the Lyric Theatre Corporation. The cor-poration was to be formed in my absence when I was in Florida. Upon my return to Lexington, Virginia, some time in the month of November, 1918, I sold my remaining interest of twelve and one-half thirty-fifths in the said Lyric Theatre; one-half to Isaac Weinberg and one-half thereof to Leo G. Sheridan.

"Q. Have you any paper writing of any sort, showing your agreement or memoranda thereof, of your sale of your interest in the Lyric Theatre Enterprise to Leo G. Sheridan?

"A. I have at this time in my possession, a writing dated November 12, 1918, in my handwriting and signed by Leo G. Sheridan and myself, for the remaining one-half of my twelve and one-half thirty-fifths interest, which I herewith file as Exhibit 'A' with my deposition.

"Q. Then you eventually sold approximately one-half of your original interest in the Lyric Theatre Enterprise to Leo G. Sheridan, did you not?

"A. To the best of my knowledge and belief I sold to Leo G. Sheridan, seventeen thirty-fifths of the entire Lyric Theatre Enterprise.

"Q. Have you been paid for the share in the Lyric Theatre Enterprise which you sold to Leo G. Sheridan, and if so, by whom?

"A. I have been paid in full for my interest and the in-terest sold to Leo G. Sheridan; was paid in full by Leo G. Sheridan for the number of shares and for the interest above stated.

"Q. Then at the time you sold and transferred your entire

interest in the Lyric Theatre Enterprise to Leo G. Sheridan and Isaac Weinberg, Weinberg and Sheridan each thereby acquired approximately a one-half interest or share in the enterprise?

"A. Mr. Weinberg purchased eighteen thirty-fifths and Leo Sheridan purchased seventeen thirty-fifths in the final consummation of the deal. This was to give Weinberg control in the proposed enterprise."

The memorandum of sale to Sheridan, Exhibit "A," with deposition of W. W. Preston, reads thus:

"In consideration and for the Sum of $625.00 Six Hundred Twenty Five Dollars W. W. Preston transfers his interest and rights in 50 shares of stocks in Lyric Theatre, as previously set out in a contract between I. Weinberg, Leo Sheridan and W. W. Preston to the said Sheridan.

"Said Leo Sheridan is to assume all liability that might arise from the said business and release the said Preston from further liability on the lease between John Sheridan, I. Weinberg and W. W. Preston on the Lyric Theatre and Sheridan Hotel."

Sheridan also testified as a witness and stated in positive terms that he had acquired the interest in the theatre assigned to Vaughan, trustee, by purchase from Preston.

The audit made by H. A. Wells, an expert accountant who examined the bank records dealing with transactions had by Weinberg and Sheridan with reference to this purchase, discloses corroborative evidence of the purchase by Sheridan.

It was also shown by complainant that Sheridan had, on two occasions, received dividends from the Lyric Corporation. Though denied by Weinberg, the record shows that after the date of the deed of assignment Vaughan was elected a director of the Lyric Corporation. While it is true that Sheridan was not the actual holder of any of the stock of the corporation, his explanation of that fact is that the issuance of stock was neglected by Weinberg.

The further holding of the chancellor that Sheridan had an assignable interest in the Lexington Picture Corporation is, in our opinion, justified by the evidence. After much proof had been introduced before the commissioner on the

question of Sheridan's assignable interest to Vaughan, trustee, Weinberg sought to change his position on the issue first submitted to the court by presenting an amended answer in which he set up an alleged hypothecation of Sheridan's stock to him as collateral security to secure the payment of a note for the sum of $5,000 due from Sheridan to him. The court denied the motion to file the amended answer, on the ground that having elected to file an original answer denying any ownership on the part of Sheridan in the corporation, and having testified to the same effect, the filing of the amended answer would violate the rule against a litigant assuming inconsistent positions in a judicial proceeding.

The action of the chancellor is without error.

In *Chesapeake & O. Ry. Co.* v. *Rison*, 99 Va. 18, 31, 37 S. E. 320, 324, it is said: "A party *is forbidden* to assume successive positions in course of a suit or series of suits, in reference to the same fact or state of facts, which are inconsistent with each other and mutually contradictory."

To the same effect is the holding of this court in the following cases: *Alexander* v. *Commonwealth*, 137 Va. 477, 120 S. E. 296; *Canada* v. *Beasley & Bros.*, 132 Va. 166, 174, 111 S. E. 251; *Bliss* v. *Spencer*, 125 Va. 36, 61, 99 S. E. 593, 5 A. L. R. 619; *Colley* v. *Summers Parrott Hardware Co.*, 119 Va. 439, 440, 89 S. E. 906, Ann. Cas. 1917D, 375.

There is another compelling reason why Weinberg should not be permitted to shift his position on a controversial question of fact. This reason is succinctly given in *Massie* v. *Firmstone*, 134 Va. 450, 462, 114 S. E. 652, 656:

"No litigant can successfully ask a court or jury to believe that he has not told the truth. His statements of fact and the necessary inferences therefrom are binding upon him. He can not be heard to ask that his case be made stronger than he makes it, where, as here, it depends upon facts within his own knowledge and as to which he has testified." See also, *Davis Bakery* v. *Dozier*, 139 Va. 628, 640, 124 S. E. 411; *Maryland Casualty Co.* v. *Cole*, 156 Va. 707, 717, 158 S. E. 873.

Appellant complains of the action of the court in placing upon him the burden of showing the manner of the acquisi-

tion of the six hundred shares of stock in the Lexington Motion Picture Corporation.

This assignment is without merit. It is clearly shown that Weinberg was in exclusive possession of the books of the corporation; that he managed the affairs of the corporation and therefore should be cognizant of the manner in which the stock was acquired.

The audit of the witness Wells makes out a *prima facie* case in favor of Vaughan, trustee, and unless rebutted, should in equity be the basis of the court's finding.

In 2 Wigmore, Evidence, section 1230, this is said:

"Where a fact could be ascertained only by the inspection of a large number of documents made up of very numerous detailed vouchers,—as, the net balance resulting from a year's vouchers of a treasurer or a year's accounts in a bank-ledger—it is obvious that it would often be practically out of the question to apply the present principle (production of documentary originals) by requiring the production of the entire mass of documents and entries to be perused by the jury or read aloud to them. The convenience of trials demands that other evidence be allowed to be offered in the shape of the testimony of a competent witness who has perused the entire mass and will state summarily the net result. Such a practice is well established to be proper. * * *

"The most commonly recognized application of this principle is that by which the state of *pecuniary accounts* or other business transactions is allowed to be shown by a witness' schedule or summary."

Appellant also challenges the court's action in refusing to dismiss complainant's bill on the ground that the doctrine of laches should be applied in this case. The familiar rule regarding this doctrine is that equity will not lend its aid to enforce stale demands when by reason of the death of parties, loss of papers, loss of evidence or other circumstances, it is difficult to do justice between the parties. *Harrison* v. *Gibson*, 23 Gratt. (64 Va.) 212; *Kavanaugh's Adm'r* v. *Kavanaugh*, 98 Va. 649, 37 S. E. 275.

While it is true that the instant suit could have been

instituted earlier, there is nothing in the record to indicate that the circumstances would have been different from what they now are, had this been done. All the material parties are living, there has been no change in the circumstances and it is not shown that the delay has caused any injustice.

Upon the whole case, we are of opinion that the decree complained of is plainly right and it will be affirmed.

*Affirmed.*