# Richmond

LOUISE CURDTS STORY PRETLOW v. ROBERT ASHTON PRETLOW.

April 21, 1941.

Record No. 2340.

Present, Campbell, C. J., and Holt, Gregory, Browning, Eggleston and Spratley, JJ.

*Savage & Lawrence,* for the appellant.

*Hunton, Williams, Anderson, Gay & Moore* and *H. Merrill Pasco,* for the appellee.

HOLT, J., delivered the opinion of the court.

Louise Curdts Story Pretlow, plaintiff in the court below and appellant here, married Robert Ashton Pret-

low on March 10, 1937. Her maiden name was Curdts. In 1917 she married a Mr. Story and with him moved to the town of Franklin. He died in 1927, leaving two children, Dorothy, then ten years old, and Elliott, six, fruits of that marriage. After Mr. Story's death she continued to make that town her home. Mr. Pretlow was a widower who also lived in Franklin. He had three children, all of whom are now living and one of whom lives with him.

As might have been expected, Mr. Pretlow and Mrs. Story were casual friends, but his interest in her became more than casual in the autumn of 1936. About the first of February, 1937, he proposed marriage and was then accepted. On March 6, 1937, an ante-nuptial settlement was entered into, and they were married four days thereafter. Mr. Pretlow was then 67 years old and she was 44. She moved into the Pretlow home and lived there about six months. In June, 1938, she filed her bill charging cruelty and desertion and asked that she be given divorce from bed and board. To that bill was filed an answer and cross-bill, which cross-bill was, in turn, answered. The marriage settlement, cross-bill and answer thereto will be found in a footnote.* To the cross-bill a demurrer was also interposed.

---

*"THIS AGREEMENT, made this 6th day of March, 1937, by and between R. A. Pretlow (widower), party of the first part, and Louise C. Story (widow), party of the second part, both having their residence and domicile in the town of Franklin, in the county of Southampton, State of Virginia;

"WHEREAS a marriage is intended soon to be solemnized between the said first and second parties, and each is seised and possessed of property of value, both real and personal, in his and her individual right, and the said R. A. Pretlow desires and has agreed to make suitable provisions for the said Louise C. Story, which provisions the said Louise C. Story has agreed to accept in lieu of any and all rights and claims of the said Louise C. Story in and to the property of the said R. A. Pretlow as widow, survivor, heir, distributee or next kin of the said R. A. Pretlow; and

"WHEREAS the said R. A. Pretlow has agreed that he shall have no rights or claims in and to the property of the said Louise C. Story as widower, survivor, heir, distributee or next of kin of the said Louise C. Story; and

The major objections set out in the demurrer to the cross-bill are that it is multifarious and that equity jurisdiction is not conferred by statute and therefore does not exist.

■ The court was of opinion that fraud which goes to the fundamentals of marriage relations gives jurisdiction and that in this case property rights growing out of that fraud could be adjusted also. We think this is right. Jurisdiction of equity at all will hereafter be considered more in detail. If equity has jurisdiction, the demurrer should have been overruled. Having reached the conclusion that inherent equity jurisdiction did exist, the cause came on to be heard upon its merits and was so heard and decided.

A detailed discussion of the evidence would serve no good purpose. It is enough to say that we have examined it with care and are of opinion that the marriage was never consummated and that for this Mrs. Pretlow is to blame. She never at any time intended that it should be consummated. This conclusion is strengthened by the judgment of the trial court; before its chancellor both the plaintiff and defendant testified. In other respects she conducted herself normally and as was to have been expected.

"WHEREAS the said R. A. Pretlow has three (3) children by a former marriage, namely: Bogart A. Pretlow, Evelyn P. Rutledge (Mrs. R. E. Rutledge) and R. A. Pretlow, Jr., all of whom are adults; and the said Louise C. Story has two (2) children by a former marriage, namely; Dorothy L. Story and Elliott L. Story, both under the age of twenty-one;

NOW THEREFORE THIS AGREEMENT WITNESSETH: That in consideration of the said intended marriage and of the mutual covenants between the said parties herein contained, it is hereby covenanted and agreed by the said parties of the first and second part as follows:

"FIRST: That said R. A. Pretlow will immediately upon the solemnization of said marriage convey or cause to be conveyed to the said Louise C. Story, by deed of general warranty and with the usual covenants of title, adequate to convey and conveying fee simple title to, the following real property, to-wit:

"(A) All the certain lot or parcel of land in the Town of Franklin, Virginia, on the west side of High street, known as lot No. 2

It is also said that even if equity had jurisdiction in this case that jurisdiction has been lost through laches.

We have not yet had occasion to pass upon equity's jurisdiction in annulment proceedings which are based upon causes not named in the statute.

Code, section 5105, in general terms gives to equity jurisdiction in suits to annul marriages.

Code, section 5087, declares that all marriages between white and colored people, and all marriages prohibited on account of either of the parties having a former husband or wife then living, are void without any decree of divorce or other legal process.

Code, section 5088, provides that all marriages which are solemnized in this State and which are prohibited shall be void from the time they are so declared by decree of divorce or annulment.

Code, section 5089, declares that those who leave the State for the purpose of evading her laws stand as if their marriage had been solemnized within the State, while Code, section 5090, deals with the age of consent.

on a map of the Edwards property and being one of the parcels of land conveyed to the said R. A. Pretlow by deed from Henry Gardiner and wife dated October 14, 1935, and recorded in the Clerk's Office for the Circuit Court of Southampton county, Virginia, in deed book 76, page 68; and

"(B) All that certain lot or parcel of land in the Town of Franklin, Virginia, on the southeast corner of Barrett Avenue and Edwards street, fronting approximately one hundred thirty-eight and five-tenths (138.5) feet on Barrett Avenue and approximately forty-three and nine-tenths (43.9) feet on Edwards street, it being a portion of the property which was conveyed to the said R. A. Pretlow by deed from T. O. Barrett and others dated August 12, 1924, and recorded in the said Clerk's Office, in deed book 66, page 307; reserving however unto the said R. A. Pretlow a life estate in the said real property for the term of his natural life.

"SECOND: That said R. A. Pretlow will immediately upon the solemnization of said marriage discharge and pay and cause to be released on the records of the Clerk's Office for the Circuit Court of Southampton county, Virginia, the deed of trust now outstanding in favor of M. H. Moore against the real property of the said Louise C. Story on the east side of Clay street in the Town of Franklin, Virginia, and will promptly after such release cause to be cancelled and delivered to the said Louise C. Story all notes, bonds and

Code, section 5100, declares that any marriage supposed to be void for any of the causes mentioned in sections 5087, 5088, 5089 or 5090 may be declared void in a suit instituted for that purpose by either party, subject to an unimportant exception.

Plaintiff contends that these statutes tell us when marriages may be annulled and name the cause for which that may be done; that this list is inclusive, from which it, of course, follows that other causes are excluded. Attention is also called to the fact that all of them deal with causes existing at the time the marriage is solemnized and that incapacity to perfrom marital duties is nowhere mentioned.

In *Heflinger* v. *Heflinger,* 136 Va. 289, 118 S. E. 316, the court points out the difference between marriage contracts and other contracts. They can not be dissolved by mutual agreement and in them the State is "interested to preserve the integrity of the marriage tie, and to enforce its laws against prohibited marriages, and

other obligations of whatever nature which are secured by the said deed of trust.

"THIRD: The said R. A. Pretlow will at his death give, grant, devise and bequeath to the said Louise C. Story, if she survive him, by a good and sufficient will executed prior to his death, the following property and property rights:

"(A) As an absolute gift to her, all of the furniture, linen and household furnishings now in the bedroom of the said R. A. Pretlow at his residence hereinafter mentioned, the said furniture being the same purchased by the said R. A. Pretlow from Biggs Antique Company in Richmond, Virginia, in the year 1936;

"(B) The right and privilege so long as she remains his widow of occupying and using during the period of five (5) years next after the death of the said R. A. Pretlow, without the payment of any rent, the house and lot now occupied by him as a residence and located on the northwest corner of High street and Barrett avenue in the Town of Franklin, Virginia, and all of the furniture, fixtures and furnishings which are at his death located therein and thereon (except those belonging to the said three (3) children of R. A. Pretlow by devise, descent or gift from their mother), during which occupancy and use the maintenance and repairs of and taxes, insurance and other fixed charges against the said house and lot and furniture, fixtures and furnishings (but not the cost of operation thereof) shall be at the expense of the estate of the said R. A. Pretlow.

general rules applicable to private contracts should not be permitted to thwart the public policy of the State established for the protection of society.''

English law is cited and relied upon.

''The decisions under the English Divorce Act follow the principles of the ecclesiastical law and are not affected by any statutory provisions on the subject of fraud. Upon a review of all the ecclesiastical decisions it has recently been held that fraud as a ground for annulment of marriage does not include such fraud as induces a consent, but only such fraud as produces the appearance without the reality of consent.'' Am. & Eng. Enc. of Law, 2d Ed., p. 1183. The text is supported by *Moss* v. *Moss*, P. D. 268 (1897), where it is said:

''When in English law fraud is spoken of as a ground for avoiding a marriage, this does not include such fraud as induces a consent, but is limited to such fraud as procures the appearance without the reality of consent.''

"FOURTH: In addition to all properties hereinabove mentioned in this contract and in addition to all properties which may be given, transferred or assigned by the said R. A. Pretlow to the said Louise C. Story during her lifetime, the said R. A. Pretlow will at his death bequeath to the said Louise C. Story, as an absolute gift and as a first charge against his estate prior to all other devises and bequests, seventy-one (71) shares of stock in Pretlow Peanut Company, Inc., (the present book value of which is THIRTY-FIVE THOUSAND DOLLARS ($35,000.00), and such additional shares of said stock or such additional amount of money as may be necessary to make the total value of this bequest THIRTY-FIVE THOUSAND DOLLARS ($35,000.00) as of the date of his death; it being the intent of this paragraph, and the same shall be so construed, that the said R. A. Pretlow is obligated to bequeath to the said Louise C. Story at his death the said seventy-one (71) shares of stock, regardless of the then value of same, and if the value of said shares then, as now, is as much as THIRTY-FIVE THOUSAND DOLLARS ($35,000.00), he shall not be obligated to bequeath any more, but if for any reason the value of said shares is then less than THIRTY-FIVE THOUSAND DOLLARS ($35,000.00) the deficiency shall be made up by a bequest of additional shares of said stock or of money, so that in any case she shall receive a legacy worth at least THIRTY-FIVE THOUSAND DOLLARS ($35,000.00).

"The said R. A. Pretlow will provide, by his will hereinafter mentioned, that the property bequeathed or devised to her in paragraph 'FOURTH' above shall be delivered to the said Louise C. Story

Reliance is placed upon the rule in Pennsylvania. In *Barnett* v. *Kimmell*, 35 Pa. 13, it is said:

"The consent of the parties to the alleged marriage is to be determined by what took place at the time of its celebration; and it is not affected by a secret reservation of one of the parties."

It was also held in *Eisenberg* v. *Eisenberg*, 105 Pa. Super. Ct. 30, 160 A. 228 (1932), that a court of equity has no jurisdiction to cancel fraudulent contracts of marriage, but the force of that rule is weakened by this fact there stated:

"It is admitted by the appellant that courts of equity in Pennsylvania do not possess general powers of a court of chancery; their jurisdiction is confined to the authority conferred upon them by statute."

In *Bielby* v. *Bielby*, 333 Ill. 478, 165 N. E. 231, it was held that evidence was insufficient to warrant a decree annulling marriage on account of fraudulent pretence

not more than five (5) years after his death, and that all income from the said property will be periodically and regularly paid to the said Louise C. Story from the date of his death.

"It is understood and agreed that if the said Louise C. Story shall die before the said R. A. Pretlow the bequest and devise hereinabove mentioned in this paragraph 'FOURTH' shall be made to and shall enure to the benefit of such of the said two (2) children and such of the lineal descendants of the said two (2) children as shall survive both the said R. A. Pretlow and Louise C. Story, in such shares and to such of said children or their said descendants as the said Louise C. Story may designate by her will, or if she leave no such will, in such shares and to such of said children or their said descendants as would receive her own estate under the provisions of the Virginia statutes of descent and distribution in force at the death of the said R. A. Pretlow; and if the said Louise C. Story shall die before the said R. A. Pretlow, leaving neither of her said two (2) children nor any lineal descendants of the said two (2) children surviving both her and him, the said R. A. Pretlow shall be under no obligation to make the bequest and devise hereinabove mentioned in this paragraph 'FOURTH'.

"It is further understood and agreed that the said R. A. Pretlow will execute a will sufficient to put into effect, and to accomplish the full performance of, the obligations hereinabove mentioned in this paragraph 'FOURTH', and that the said R. A. Pretlow will not in any manner, by gift, sale, transfer, hypothecation, will or otherwise, dispose of the specific property hereinabove mentioned in

of affection and because of refusal to consummate marriage. That is to say, this case was reversed for insufficiency of evidence among other causes.

"Appellee does not testify that he ever requested that the marriage be consummated or that she ever refused so to do."

*Clark* v. *Clark*, 219 Iowa 338, 258 N. W. 719, is a case in which a woman represented to a man that he was the father of her unborn child. The court pointed out that the Iowa Code specified grounds upon which the marriage might be annulled and said that this was not one of them. It further said:

"It is our conclusion that, under the situation in which the plaintiff found himself in this case, the statute has provided him a remedy as pointed out in section 10476, and, so long as the statute has provided the remedy for the condition in which he claims to have found himself, we think that he is bound to follow that remedy and that

this paragraph 'FOURTH' except in the manner provided by this contract, or in any way diminish his estate to such a point that the same is insufficient, after the payment of all of his debts, to discharge in full the obligations contained in this contract.

"FIFTH: The said R. A. Pretlow does hereby agree that all property, real and personal, of the said Louise C. Story, now owned or hereafter acquired, wherever located, shall be and remain her sole and individual property, free from all rights or claims of the said R. A. Pretlow, his heirs, distributees, personal representatives, assigns and creditors, by way of curtesy, inheritance, descent, distribution or in any other way; and the said R. A. Pretlow does hereby forever release and relinquish unto the said Louise C. Story any and all rights and claims of himself, his heirs, distributees, personal representatives, assigns and creditors in and to the said property of Louise C. Story, whether such rights or claims be by way of curtesy, inheritance, descent, distribution or in any other way, and any other right or claim in or to the said property of Louise C. Story which may in any manner arise or accrue by virtue of said marriage; and the said R. A. Pretlow further agrees to execute and acknowledge upon request of the said Louise C. Story, or of her heirs, devisees, personal representatives or assigns, any and all proper instruments of release and conveyance to enable the said Louise C. Story, or her heirs, devisees, personal representatives or assigns, to bargain, sell, convey, or devise or will, or otherwise dispose of any and all property of the said Louise C. Story, now owned or hereafter

he has no right to maintain this independent action in equity.''

It, however, added this saving clause: ''We do not say that a condition might not arise in which equity will afford relief.''

*Phillips* v. *Phillips*, 182 Ark. 206, 31 S. W. (2d) 134, is a case in which duress was relied upon. In reversing the decree of the court below, it was said:

''The subject of marriage, divorce, and annulment are regulated by statute, and no divorce can be granted for any cause other than those specified in the statute, and no decree of annulment can be had except for the causes mentioned in the statute.''

In *Lyannes* v. *Lyannes*, 171 Wis. 381, 177 N. W. 683, there appears to have been false representations as to age when the license was secured. Relief was denied. The court said:

acquired, real or personal, wherever located, free and clear of any real or apparent right of the said R. A. Pretlow therein.

"SIXTH: Upon the full and complete performance by R. A. Pretlow, his heirs, distributees, personal representatives and assigns, of the covenants and agreements on his part herein contained, the said Louise C. Story will release and relinquish to the said R. A. Pretlow, his heirs, distributees, personal representatives and assigns, any and all rights and claims of herself, her heirs, distributees, personal representatives, assigns and creditors in and to any and all property of R. A. Pretlow, real and personal, wherever located, now owned or thereafter acquired, whether such rights or claims be by way of dower, inheritance, descent, distribution or otherwise, and will execute and acknowledge upon request of the said R. A. Pretlow, or of his heirs, devisees, personal representatives or assigns, any and all proper instruments of release and conveyance to enable the said R. A. Pretlow, or his heirs, devisees, personal representatives or assigns, to bargain, sell, convey, or devise or will, or otherwise dispose of any and all property of the said R. A. Pretlow, real or personal, wherever located, now owned or hereafter acquired, free and clear of any real or apparent right of the said Louise C. Story therein.

"SEVENTH: This contract is executed in duplicate, one copy being delivered to the party of the first part and the other to the party of the second part.

"WITNESS the following signatures and seals as of the day and year first above written.

"R. A. PRETLOW (Seal)

"* * * we deem it proper to say that we can see no valid reason for holding otherwise than that the jurisdiction and power to annul is exactly the same as that to divorce, and that both are exclusively of statutory creation, and neither rest upon nor can be extended by resort to the general equitable powers inherent in the circuit court as a court of equity." See also, *Southern Pac. Co.* v. *Industrial Commission of Arizona,* 54 Ariz. 1, 91 P. (2d) 700 (1939).

Many States by statute, among them Virginia, catalogue the causes or conditions which will support a decree. An opinion which without more rests its decision upon the statute is not very helpful. The fact that a given case does or does not measure up to its requirements is merely a matter of evidence, and such cases become of importance only when they undertake to deal with the inherent jurisdiction of equity courts.

■ Many cases in Virginia tell us of the alertness of equity to search out fraud. Others draw attention to

"Witnesses as to signature of R. A. Pretlow:

"JOHN C. PARKER, JR.,
"MARY E. WESTBROOK.

"LOUISE C. STORY (Seal)

"Witnesses as to signature of Louise C. Story:

"JOHN C. PARKER, JR.,
"MARY E. WESTBROOK.

"State of Virginia:

"County of Southampton, To-wit:

"I, Mary E. Westbrook, a Notary Public in and for the State and county aforesaid, do hereby certify that R. A. Pretlow and Louise C. Story, whose names are signed to the writing above bearing date the 6th day of March, 1937, have acknowledged the same before me in my State and county aforesaid.

"My commission expires the 8th day of August, 1939.
"Given under my hand this 8th day of March, 1937.

"MARY E. WESTBROOK,
"Notary Public."

the fact that the contract of marriage differs from ordinary contracts because it is affected with a public interest. The nearest approach to an expression of opinion by us on the issue here presented appears in *Heflinger* v. *Heflinger, supra,* where Judge Burks said:

"The right to bring a suit for annulment is expressly given by section 5100 of the Code, but this is probably merely declaratory of a preexisting ground of equitable jurisdiction. *McClung* v. *Terry,* 21 N. J. Eq. 225; *Fuller* v. *Fuller,* 33 Kan. 582, 7 Pac. 241; 2 Bish., Mar. & Div. & Sep., sec. 801-ff."

This was by way of *obiter,* but it shows the bent of his mind.

"The fact that a statute enumerates certain grounds for annulment of a marriage does not imply that no other grounds exist. In this country, aside from legislative divorces, the only grounds for divorce in its restricted sense as distinguished from annulment are those specified by the statutes." 17 Am. Jur. 165.

### CROSS-BILL.

"By way of a cross-bill, respondent now respectfully shows unto this honorable court the following:

"A. That on the 10th day of March, 1937, what purported to be a marriage was solemnized between complainant and respondent in the city of Richmond, Virginia, and that said 'Exhibit A' filed with the bill of complaint in this case is a duly certified copy of the marriage license, together with a certificate showing the time and place of the alleged marriage by the person who performed the ceremony.

"B. That both complainant and respondent have resided and been domiciled in the State of Virginia, and in the town of Franklin, Southampton county, for a number of years, that both of them are now domiciled in, and each is and has been an actual *bona fide* resident of said town of Franklin for more than one year next preceding the commencement of this action.

"C. That at the time of said alleged marriage the complainant was a widow, having two children by her former marriage, namely Dorothy L. Story and Elliott L. Story, both of whom were then under the age of twenty-one (21) years; that the said Dorothy L. Story is now an adult, having since attained the age of twenty-one (21) years; and that at the time of said alleged marriage the respondent was a widower, having three children by his former marriage, namely Bogart A. Pretlow, Evelyn P. Rutledge (Mrs. R. E. Rutledge) and R. A. Pretlow, Jr., all of whom are adults.

██ ''Sec. 803. Fraud, Mistake, Duress, Lunacy.— Since the status of marriage is conferred by a contract, without which it cannot exist, and since for avoiding contracts equity has jurisdiction over all questions of fraud, mistake, and lunacy, if one of these impediments has entered into a marriage, a court of equity, in the absence of any other jurisdiction, will on due application pronounce it void * * * .'' 2 Bishop on Marriage, Divorce & Separation (1891), section 801, *et seq.*, cited by Judge Burks in the *Heflinger Case.*

''In England the courts do not seem to have had jurisdiction to annul marriages for fraud, the only remedy being an application to Parliament to dissolve the marriage, and it has been held that the statute of 1857 (20 & 21 Vict., c. 85), creating the divorce court conferred no jurisdiction to annul a marriage for such cause. In this country at an early date courts of equity assumed independent jurisdiction of suits to annul marriages on the ground of fraud. This jurisdiction was expressly

---

''D. That prior to said marriage ceremony, and under date of March 6, 1937, complainant and respondent entered into what purported to be an antenuptial agreement, a copy of which is filed with said bill of complaint as 'Exhibit B', and which said copy is prayed to be taken and read as a part of this cross-bill.

''E. That under and by virtue of said antenuptial agreement respondent agreed (1) to convey certain valuable real estate to the complainant, (2) to pay off certain debts owed by complainant and then secured by a deed of trust on real estate owned by her, (3) to make certain substantial bequests and provisions to and for complainant in his will, subject to the proviso that if the complainant should predecease him then certain of such substantial bequests should be made by him to her said children, namely Dorothy L. Story and Elliott L. Story, or to the lineal descendants of said children, and (4) to release any and all claims by way of curtesy, inheritance, descent, distribution or otherwise, in or to any property then or thereafter owned by the complainant, all as is more fully stated in said agreement, made a part hereof as aforesaid.

''F. That the complainant, in said antenuptial agreement, agreed upon the full and complete performance by respondent of the terms and provisions thereof, to release and relinquish unto respondent any and all rights and claims of herself in and to all other property of the respondent, then owned or thereafter acquired, whether such rights or claims be by way of dower, inheritance, descent, distribution

rested upon the general power to vacate contracts in all cases where they had been procured by fraud. From this general jurisdiction of equity a contract of marriage was not regarded as being excepted, when the assent to it was the result of artifice or gross fraud. At the present time the statutes very generally expressly confer this jurisdiction upon some court. * * * '' 9 R. C. L. 293.

See also Black on Rescission & Cancellation, Vol. II, sec. 345.

■ ''The trend of the authorities in that annulment of an unconsummated marriage may be secured more readily than in a case where the parties have cohabited. *Smith* v. *Smith*, 171 Mass. 404, 50 N. E. 933, 41 L. R. A. 800, 68 Am. St. Rep. 440; *Richardson* v. *Richardson*, 246 Mass. 353, 140 N. E. 73, 31 A. L. R. 146; *Arno* v. *Arno*, 265 Mass. 282, 163 N. E. 861.'' *Hanson* v. *Hanson*, 287 Mass. 154, 191 N. E. 673. See also, *Cox* v. *Cox* (N. J. Ch. 1909), 110 Atl. 924.

■ ''Marriage before consummation will be dissolved

---

or otherwise, all as is more fully stated in paragraph 'Sixth' of said antenuptial agreement.

"G. That the respondent duly conveyed unto the complainant the two tracts of real estate specified in paragraph 'First' of said agreement, which said tracts of real estate then had and now have a value of at least $15,000; that respondent paid off and discharged the indebtedness owed the complainant in the amount of approximately $5,200, evidenced by a $4,000 bond executed by the complainant and held by one M. H. Moore, and a note or notes aggregating approximately $1,200, likewise executed by complainant, which note or notes were held by the Merchants & Farmers Bank, Franklin, Va.; that respondent was thereby enabled to and he did obtain and procure for complainant a release of the deed of trust on certain real estate owned by her; that respondent duly executed a will containing the specified provisions for the complainant and her said children; and that all of this was duly performed and effectuated by respondent in pursuance of the terms and provisions of said agreement of March 6, 1937.

"H. That the consideration for the execution of said agreement by respondent, and for the performance and effectuation thereof by him, as aforesaid, was the agreement of complainant to consummate and enter into the marital relationship with the respondent, expressly referred to in said agreement; and that by virtue of complainant's action and conduct as herein set forth there has been a complete failure of such consideration.

for any kind of fraud which would render a contract voidable.'' *Caruso* v. *Caruso,* 104 N. J. Eq. 588, 146 A. 649.

In Long on Domestic Relations (2d Ed.) 1913, sec. 45, it is said:

''There is a tendency at present to set aside a marriage for fraud more readily where the marriage has not been physically consummated than where there has been consummation. This distinction rests upon the soundest reasons. If the defrauded party discovers the fraud before the marriage is consummated, and thereafter refuses to cohabit, it is plain that the considerations of public policy against the dissolution of marriage are entitled to far less weight than where the marriage has been followed by cohabitation.''

In *Dickinson* v. *Dickinson,* L. R., p. 198, 82 L. J. Prob. N. S. 121, 109 L. T. N. S. 408, 29 Times L. R. 765 (1913), it was held that ''the willful and deliberate failure of a wife to consummate a marriage was adequate ground for its annulment.'' * * *

---

''I. That although the formalities of marriage prescribed by law were solemnized on the 10th day of March, 1937, as aforesaid, the complainant has never in fact entered into or consummated the marital relationship with respondent in that she has never at any time had sexual intercourse with the respondent and has at all times withheld the same from him.

''J. That this withholding of sexual intercourse by the complainant, despite the natural, lawful and repeated requests and solicitations of respondent, her husband, began on the 10th day of March, 1937, the day of the marriage ceremony, and continued at all times without justification or excuse until on or about November 17, 1937, when respondent discontinued the pretense of living further with complainant.

''K. That at all times since the marriage ceremony complainant has been cold, indifferent and unaffectionate in her personal relationship with respondent; that, except to preserve appearances in public and before the children, she has refrained from kissing respondent and from all manifestations of love and affection whatsoever; and that although she continued to occupy the same residence with respondent, she withheld her love, affection, companionship and services from him, and in practical effect was nothing more than a stranger within respondent's home, all without just cause or excuse.

"It has always been held that the contract of marriage implies the ability to consummate it. In my opinion it also implies the willingness to consummate it." * * *

"It is apparent enough that without sexual intercourse the ends of marriage, the procreation of children and the pleasures and enjoyment of matrimony, cannot be attained."

The situation in England is interesting and confused. *Moss* v. *Moss* was decided in 1897. The opinion there was delivered by Sir Francis Henry Jeune, one of the judges of the Court of Appeals and President of the Probate, Divorce and Admiralty Division. There relief was denied. The opinion in the *Dickinson Case,* decided in 1913, was delivered by Sir Samuel T. Evans, also one of the judges of the Court of Appeals and President of the Probate, Divorce and Admiralty Division. In each instance Sir Frederick Pollock was the editor. In the latter case the facts were quite like those in judgment here, and there the prayer of the petitioner was granted

"L. That complainant deliberately entered into the marriage contract and solemnization thereof with the intent and purpose never to consummate the same by the having of sexual intercourse with respondent, her husband; that this was a deliberate and pre-conceived intent and purpose at the time she agreed to marry respondent, and at the time the solemnization of their marriage occurred, and that this secret intent and purpose was not disclosed to respondent.

"M. That the real purpose of complainant in agreeing to the marriage ceremony was to obtain support and maintenance from the respondent, to obtain a share of respondent's property for herself and for her two children (as set forth in said antenuptial agreement), and to derive the social benefit and standing which would enure to her through being the wife of respondent.

"N. That there is implicit in every marriage agreement the mutual promise that each of the parties thereto will perform the duties and obligations of the marital relationship, and that one of the most sacred and important of these is the mutual duty and obligation to engage in normal sexual intercourse.

"O. That respondent married the complainant and entered into said antenuptial agreement with her in reliance upon the implied promise by complainant that she would assume and perform all of the duties and obligations of the marital relationship as aforesaid; and that respondent would never have married complainant or have entered into said antenuptial agreement had he been apprized of her secret intent and purpose as aforesaid.

and "a decree *nisi* of nullity" ordered. A headnote of the editor reads:

"Willful and persistent refusal to allow any marital intercourse is a sufficient ground for a decree of nullity."

In *Brown* v. *Scott*, 140 Md. 258, 117 A. 114, 22 A. L. R. 810, the court criticises the *Moss Case* and refused to follow it.

The State is interested in maintaining the sanctity of marriage relations, and it is interested in the ordered preservation of the race. It has a double interest.

In *Crouch* v. *Wartenberg*, 86 W. Va. 664, 104 S. E. 117, 11 A. L. R. 212, the court said:

"There is no doubt of the right and power of a court of equity, at the request of either party to the contract, to entertain a suit for the purpose of affirming or annulling a marriage supposed to be void, or as to the validity of which any doubt exists, and counsel do not question such right. *McClurg* v. *Terry*, 21 N. J. Eq. 225; *Clark* v. *Field*, 13 Vt. 460. * * * "

"P. That complainant's conduct, as hereinabove set forth, constituted a deliberate and wilful fraud upon respondent and that by virtue of said fraud he was wrongfully and unlawfully induced to marry complainant and to execute and perform said antenuptial agreement.

"Q. That by virtue of complainant's failure to consummate the marital relationship and to perform the duties and obligations thereof, as aforesaid, respondent has suffered and sustained great mental anguish and distress, and he has likewise suffered and sustained injury to his physical well-being and to his nervous system.

"R. That complainant and respondent occupied the same residence, and purported to live together as man and wife from the 10th day of March, 1937, until on or about the 17th day of November, 1937, that although respondent was shocked and distressed by the refusal of complainant to assume at once the normal marital relationship, he continued so to live with her for the period specified in the hope and expectation that complainant's refusal and failure as aforesaid constituted a temporary situation which would be corrected after a reasonable period of adjustment; that finally in November, 1937, and after more than six months' of complete frustration, respondent ascertained for the first time that complainant had entered into the marital relationship with the intent and determination never to consummate the same as aforesaid, and that such intent and determination had remained unchanged at all times since the

In *Meredith* v. *Shakespeare*, 96 W. Va. 229, 122 S. E. 520, it appears that two young people got married by way of a joke and never in fact lived tgether. This marriage was set aside. The court said:

"This suit is to annul the marriage between plaintiff and defendant, occurring on August 14, 1922, as distinguished from divorce, and upon grounds other than those specifically mentioned in section 1 of chapter 64 of the Code, the jurisdiction and power thereby invoked being not that conferred by the statute, but the inherent jurisdiction and power of a court of equity with respect to all civil contracts, voidable upon any ground cognizable by such courts. That such inherent power and jurisdiction exists is settled law in this state and elsewhere, and has been here declared and applied in at least two cases of this character."

In *Anders* v. *Anders*, 224 Mass. 438, 113 N. E. 203, L. R. A. 1916E, 1273 (1916), it appears that the woman's only object in getting married was that she might go

marriage ceremony; that accordingly, and upon advice of counsel, respondent on or about the 17th day of November, 1937, left the residence which he and complainant had occupied, and after remaining out of the town of Franklin for some days, took up temporary quarters at a local hotel; that thereafter, and likewise upon advice of counsel, respondent requested complainant, and her two children, to leave said residence, which was the exclusive property of the respondent; that despite such request, which was several times repeated, complainant continued unlawfully to occupy respondent's said residence until on or about the 18th day of February, 1938, when in her absence from the town of Franklin, respondent was able to re-enter and obtain possession of his said residence; and that upon her return, respondent was careful to deliver to her all of her clothing and personal effects found therein.

"S. That by virtue of the foregoing, no valid or lawful marriage between complainant and respondent has ever been consummated; that the alleged marriage solemnized on the 10th day of March, 1937, is either absolutely void, or at least voidable at the election of the respondent, whose consent thereto, as well as to said antenuptial agreement, was obtained by the wilful and deliberate fraud perpetrated upon him by complainant as aforesaid; and that having now ascertained and discovered said fraud, respondent has elected to rescind and annul said alleged marriage with complainant, and said antenuptial agreement.

back to Europe as a married woman for the sake of herself and her child. She did go and never saw her husband again. This marriage was annulled.

The plaintiff here says that it stands alone in Massachusetts and is not in accord with *Chipman* v. *Johnston,* 237 Mass. 502, 130 N. E. 65, 14 A. L. R. 119, and *Richardson* v. *Richardson,* 246 Mass. 353, 140 N. E. 73, 31 A. L. R. 146.

These two last named cases do not mention the *Anders Case* and so could not have been intended to overrule it. Moreover, the *Anders Case* is in substance affirmed in *Hanson* v. *Hanson,* 287 Mass. 154, 191 N. E. 673, where it is said:

"These facts do not bring the case at bar within the decision of *Anders* v. *Anders,* 224 Mass. 438, 113 N. E. 203, L. R. A. 1916E, 1273, where the fraud of a woman in marrying the libellant in order to secure a married

"T. That by virtue of the foregoing, the conveyances by respondent to complainant of the two tracts of real estate specified in paragraph 'First' of said antenuptial agreement (evidenced by a deed from respondent to complainant dated March 6, 1937, and recorded in the Clerk's Office of the Circuit Court of Southampton county on March 24, 1937, in deed book 77, page 508) was induced and obtained by fraud; and that therefore respondent is entitled to have the same rescinded and set aside.

"U. That complainant is the record fee simple owner (subject to a life estate in respondent) of said two tracts of real estate conveyed to her by respondent as aforesaid, and respondent is advised, and alleges upon information and belief, that complainant may endeavor to convey, encumber or dispose of the same, or a part thereof, pending the final determination of this cause.

"V. That by virtue of the interests of complainant's two children, namely, Dorothy L. Story and Elliott L. Story, under the terms and conditions of said antenuptial agreement, and by virtue of the relief sought by complainant in her said bill of complaint, as well as the relief herein sought by respondent in this cross-bill, the respondent avers that full justice cannot be done, and that the whole controversy here involved cannot be ended in this action without the presence herein as parties hereto of the said Dorothy L. Story and Elliott L. Story, and that therefore they should be made parties to this cause of action.

"WHEREFORE, and inasmuch as your respondent is remediless in the premises save in a court of equity where matters of this sort are alone cognizable, and in order to avoid multiplicity of suits, your

name, with the intent never to perform any one of her duties as a wife, was held cause for an annulment. There the fraudulent purpose was concealed. In the instant case the libellee made his purpose clear. He never misled the libellant into thinking that the marriage would be consummated. An executory contract may be invalidated with less difficulty than a fully executed one. The trend of the authorities is that annulment of an unconsummated marriage may be secured more readily than in a case where the parties have cohabited.''

When the *Anders Case* was decided, fraud was not a statutory ground for annulment. Rev. Laws of Mass., 1902, Chap. 151, sec. 1, *et seq.* See also Gen. Laws of Mass., 1932, Chap. 207.

In *Mayer* v. *Mayer*, 207 Cal. 685, 279 P. 783 (1929), the general rule is succinctly stated as follows:

"This court held, in *Millar* v. *Millar*, 175 Cal. 797, 167 Pac. 394, L. R. A. 1918B, 415, Ann. Cas. 1918E, 184, in line with the weight of authority, that if one of the parties

respondent prays that the complainant's bill be dismissed; that this may be treated as his answer and cross-bill to said bill of complaint; that Louise Curdts Story Pretlow, the complainant herein, be made a party defendant to this cross-bill and required to answer the same, but not under oath, answer under oath being hereby expressly waived; that said children, Dorothy L. Story and Elliott L. Story, be made parties defendant hereto; that a suitable guardian *ad litem* be appointed for the infant defendant, Elliott L. Story, and that the said Dorothy L. Story and the guardian *ad litem* for Elliott L. Story be required to answer this cross-bill, but not under oath, the oath being hereby expressly waived; that all proper process issue; that the alleged marriage purportedly entered into by the complainant and respondent on the 10th day of March, 1937, be found and decreed to be void, and that the same may be duly annulled according to law; that said antenuptial agreement entered into by and between complainant and respondent on the 6th day of March, 1937, be rescinded and cancelled and that respondent be relieved and discharged of all the duties and obligations specified therein; that the complainant be compelled and required to make complete and full restitution to the respondent of the sums of money paid by him for and on her behalf, including said sums so paid by him under and pursuant to the provisions of said antenuptial agreement; that unless and until the complainant makes full and complete restitution of said sums so paid on her behalf by respondent, that her real estate which was formerly subject to a deed of trust as security for said obligations so paid off and discharged by respondent, be subjected to and impressed with

to a marriage goes through the ceremony with an intention not to consummate the marriage by marital intercourse, and persists in such intention, an annulment will be granted upon the application of the other party on the ground of fraud. *Anders* v. *Anders*, 224 Mass. 438, 113 N. E. 203, L. R. A. 1916E, 1273. * * * " (279 Pac. 785.)

. "* * * in this state the courts of equity, independently of any statute, but in virtue of their general jurisdiction to vacate contracts procured by fraud, have exercised the power to annul a contract of marriage when the marriage was induced or procured by fraud or coercion. * * *" *Ridgely* v. *Ridgely*, 79 Md. 298, 29 A. 597, 25 L. R. A. 800 (1894).

Upon the subject of inherent equity jurisdiction see also *Ferlat* v. *Gojon*, 1 Hop. Ch. 478, 14 Am. Dec. 554 (1825); *Millar* v. *Millar*, 175 Cal. 797, 167 P. 394, L. R. A. 1918B, 415, Am. Cas. 1918E, 184; *Clark* v. *Field*, 13 Vt. 460; *Maier* v. *Lillibridge*, 112 Mich. 491, 70 N. W. 1032;

a trust in favor of and for the benefit of respondent, to the extent of such sums so paid by him, together with lawful interest thereon from the date such payments were made by him until the same are repaid to him; that said conveyance by respondent to complainant of the two tracts of real estate specified in paragraph 'First' of said antenuptial agreement be rescinded and set aside; that if necessary in order to restore clear title to said tracts of real estate in and to the respondent, the complainant be ordered and required to reconvey, by an appropriate deed or deeds, said tracts of real estate to the respondent; that pending the final determination of this cause complainant be enjoined and restrained from conveying, encumbering or disposing of said real estate heretofore conveyed by respondent to complainant, or any part thereof; and that your respondent may be granted such other, further and general relief in the premises as the nature of his case may require, or to equity may seem meet.

"And your respondent will ever pray, etc."

### ANSWER TO CROSS-BILL.

"This complainant, reserving unto herself the benefit of all just exceptions to the cross-bill of the respondent filed herein, for answer thereto, or to so much thereof as she is advised it is material for her to answer, answering says:

"1. Answering paragraph A of the said cross-bill, this complainant admits that on the 10th day of March, 1937, this complainant was lawfully married in the city of Richmond, Virginia, to the re-

*Parkinson* v. *Mills,* 172 Miss. 784, 159 So. 651; *Di Lorenzo* v. *Di Lorenzo,* 174 N. Y. 467, 67 N. E. 63, 63 L. R. A. 92, 95 Am. St. Rep. 609 (1903), 2 Schouler on Marriage, Divorce, Separation and Domestic Relations, sec. 1142; 38 Corpus Juris (Marriage), sec. 69; *People* v. *Glab,* 13 Cal. App. (2d) 528, 57 P. (2d) 588; *Christlieb* v. *Christlieb,* 71 Ind. App. 682, 125 N. E. 486 (1919); *Powell* v. *Powell,* 18 Kan. 371, 26 Am. Rep. 774; *Browning* v. *Browning,* 89 Kan. 98, 130 P. 852, L. R. A. 1916C, 737, Am. Cas. 1914C, 1288; *Rooney* v. *Rooney,* 54 N. J. Eq. 231, 34 A. 682 (1896), and *Avakian* v. *Avakian,* 69 N. J. Eq. 89, 60 A. 521.

 Jurisdiction once acquired is not lost unless there is some statutory declaration which makes the purpose of the legislature plain. *Meredith* v. *Shakespeare, supra; Anders* v. *Anders, supra.* If by statute, without more, we were to declare that nullity might be decreed because of infancy, it could not be successfully contended that equity jurisdiction in all other cases was wiped away.

spondent, Robert Ashton Pretlow, and that Exhibit A filed with the bill of complaint of this complainant is a duly certified copy of the marriage license, together with a certificate showing the time and place of the said marriage by the person who performed the ceremony.

"2. This complainant admits the allegations of paragraph B of the said cross-bill.

"3. Answering paragraph C of the said cross-bill. this complainant admits that at the time of her marriage to the respondent she was a widow, having two children by her former marriage, namely Dorothy L. Story and Elliott L. Story, both of whom were then under the age of twenty-one years; that the said Dorothy L. Story is now an adult, having since the said marriage attained the age of twenty-one years; and that at the time of the said marriage respondent was a widower, having three children by his former marriage, namely, Bogart A. Pretlow, Evelyn P. Rutledge (Mrs. R. E. Rutledge) and R. A. Pretlow, Jr., all of whom then were and now are adults.

"4. Answering paragraph D of the said cross-bill, this complainant admits that under date of March 6, 1937, this complainant and respondent entered into an antenuptial agreement, a copy of which is filed as Exhibit B with the bill of complaint of this complainant.

"5. Answering paragraphs E and F of the said cross-bill, this complainant avers that prior to the marriage of this complainant and the said respondent they entered into an antenuptial agreement, bearing date on the 6th day of March, 1937, a copy of which said agreement is filed as Exhibit B with the bill of complaint of this complainant,

And the fact that our statute has named more than one cause and not all does not change the situation. The power of equity to compel a husband to support a wife from whom he is separated is not lost because statutes afterwards enacted and for other causes have placed that burden upon him. Those dealing with divorce have not abridged inherent equity jurisdiction. *Heflin* v. *Heflin, ante,* p. 385, 14 S. E. (2d) 317, opinion this day handed down by Mr. Justice Gregory.

We apply the same principle where equity jurisdiction is given to law courts.

■ "Courts of equity, having once acquired jurisdiction, never lose it because jurisdiction of the same matters are given to law courts, unless the statute giving such jurisdiction uses prohibitory or restrictive words." *Filler* v. *Tyler,* 91 Va. 458, 22 S. E. 235.

■■ Divorce is the creature of statute; annulment rests within the inherent power of equity, inherited by it

and that under and by virtue of the said antenuptial agreement this complainant and the said respondent agreed to and with each other as in said agreement set out, reference being made to the said agreement for the exact terms and provisions thereof. This complainant denies that the terms and provisions of the said agreement are either fully or with complete accuracy of detail stated in the said paragraphs E and F of the said cross-bill.

"6. Answering paragraph G of the said cross-bill, this complainant avers that by deed dated March 6, 1937, and recorded in the office of the clerk of the Circuit Court of Southampton county, Virginia, in deed book 77, at page 508, the said respondent conveyed to this complainant two parcels of land, which this complainant understands to be two tracts referred to in paragraph First of the above mentioned agreement, the said respondent, however, reserving to himself a life estate for the duration of his life in and to the property so conveyed. This complainant is not advised as to the value of said property, either as of the date of the said deed or now, but is informed that when the said deed was recorded the tax paid was on the basis of a valuation of Nine Thousand Dollars ($9,000.00). The complainant believes it to be true that the said respondent paid an indebtedness of this complainant evidenced by a Four Thousand Dollar ($4,000.00) bond and secured by a deed of trust on the property of this complainant and caused the said deed of trust to be released of record, as provided in paragraph Second of the above mentioned agreement. This complainant further believes it to be true that the said respondent paid a note or notes aggregating approximately Twelve Hundred Dollars ($1,200.00) executed by this complainant and held by Merchants and Farmers

from the ecclesiastical courts of England. Fraud, particularly before consummation, is within the reach of its long arm, and that power is not lost because other grounds are specifically mentioned in the statute. It is a power not conferred by statute but is inherent with respect to all civil contracts voidable upon grounds recognized by it.

Plaintiff, as we have seen, further contends that even if this equitable right once attached it has been lost through laches. As a general rule, he who discovers fraud imbedded in his contract must, upon its discovery and without delay, seek rescission if he is to prevail.

"A contract tainted with fraud is not void, but voidable. Therefore, great punctuality and promptness of action are required by the deceived party upon his discovery of the fraud. * * * If, after discovering the untruth of the representations, he conducts himself with

Bank, Franklin, Virginia, which notes, however, were not secured by deed of trust or otherwise, and the payment thereof, by the said respondent, was not required or provided for by the terms of said antenuptial agreement. This complainant is not informed as to whether or not the said respondent executed a will containing the provisions specified in the said agreement.

"7. Answering paragraph H of the said cross-bill, this complainant avers that the consideration for the execution by the complainant and by the said respondent of the antenuptial agreement hereinabove referred to was the contemplated and intended marriage of this complainant and the said respondent and the covenants and agreements on the part of each of the parties thereto therein contained, and that one of the purposes of the said agreement was to limit and restrict as therein provided the marital rights of each of the parties in and to the property of the other had no such antenuptial agreement been executed prior to the solemnization of such marriage. Except as herein stated, all other allegations of the said paragraph H are denied.

"8. This complainant denies the allegations of paragraphs I, J and K of the said cross-bill, and specifically denies that she has at any time since the solemnization of the marriage between this complainant and the said respondent refused to enter into or consummate her marital relationships with the said respondent, or been cold, indifferent or unaffectionate in her personal relationship with the said respondent, or repelled his advances, or refused to kiss him, or withheld herself from him in sexual intercourse. On the contrary, this complainant avers that she has at all times since the said

reference to the transaction as though it were still subsisting and binding, he thereby waives all benefit of and relief from the misrepresentations. * * * And this duty promptly to disaffirm a fraudulent transaction is not dependent upon the proof of injury by the delay to the other party.'' *West End Real Estate Co.* v. *Claiborne,* 97 Va. 734, 34 S. E. 900.

''While the party entitled to relief may either avoid the transaction or confirm it, he cannot do both, if he adopts a part, he adopts all; he must reject it entirely if he desires to obtain relief.'' Pomeroy's Equity Jurisprudence, p. 1914.

This rule this court has repeatedly affirmed, but in its application we look to facts in each particular case.

In *Harper* v. *Harper,* 159 Va. 210, 165 S. E. 490, a creditor waited seven years before undertaking to en-

marriage exerted every reasonable effort and done everything within her power to be a true, real and affectionate wife to the said respondent in every particular, both in public and in private; that when she married the said respondent this complainant had for him a real affection and a high regard and did her honest best to contribute to the happiness of the said respondent, and to fulfill her obligations to him as a wife, not only because of her recognition of the duty and obligation imposed upon her by marriage, but also because of her affection for the said respondent and her consequent desire to promote and contribute to his comfort and well being, meet all his reasonable demands and gratify all his proper desires. This complainant avers that she did her utmost to look after their home and see that it was run in an orderly and proper manner and in accordance with the wishes and pleasure of the said respondent, and to see to it that his needs were taken care of and his comfort provided for. This complainant avers that not only did she and the said respondent occupy the same residence, but they also occupied the same room and habitually over a period of months occupied, for an extended time almost every night, the same bed in that room; that at no time did this complainant ever refuse or decline to permit the said respondent to get into bed with this complainant nor require him to leave her bed before he chose to do so; that not only did this complainant not withhold herself from sexual intercourse with the said respondent, but on the contrary she willingly and repeatedly submitted herself to his embraces and affections and endeavored in every reasonable way to cooperate with the said respondent in his desire and

force an equitable lien. The court refused to apply the doctrine, and in the course of its opinion said:

 "Prejudicial delay must be shown before the defense can be successfully maintained. Laches, in legal significance, is delay that works a disadvantage to another." *National Valley Bank of Staunton* v. *United States Fidelity & Guaranty Co.*, 153 Va. 484, 150 S. E. 403.

In *Strickland* v. *Ayers,* 159 Va. 311, 165 S. E. 387, three months after ascertaining that certain misrepresentations as to land had been made by the vendor, suit was brought to set aside the contract of sale. The court said that there was no change in the conditions of those interested and quoted with approval this statement from *National Valley Bank of Staunton* v. *United States Fidelity & Guaranty Co., supra*:

" 'Laches in legal significance is not delay, but delay

efforts to have sexual intercourse with her, ofttimes to the point of her well-nigh complete nervous and physical exhaustion.

"9. This complainant denies the allegations of paragraph L of the said cross-bill.

"10. Answering paragraph M of the said cross-bill, this complainant admits that she naturally expected when she married the said respondent that the said respondent would adequately and properly support and maintain this complainant, in a manner consistent with his means, position and standing, and that she would enjoy whatever benefit might properly be incident to her position as the wife of the said respondent. This conplainant, however, denies that her real purpose in agreeing to marry the said respondent—if by real is meant the sole or primary purpose—was to obtain support and maintenance from the said respondent, to obtain a share of respondent's property for herself and her two children, and to derive the social benefit and standing which would inure to her through being the wife of the said respondent. This complainant avers that her social standing prior to her marriage was not less high than that of the said respondent, and that she then had a position which she had held for years, the income from which afforded a comfortable living for herself and her children, which position she, at the request and insistence of the said respondent, resigned just prior to and in contemplation of her marriage.

"11. This complainant admits the allegations of paragraph N of the said cross-bill.

"12. Answering paragraph O of the said cross-bill, this com-

that works a disadvantage to another. So long as the parties are in the same condition, it matters little whether a right is pressed promptly or slowly within the limits allowed by law. The disadvantage may come from loss of evidence, change of title, intervention of equities and the like, but there must be prejudice from the delay.' "

And further:

"The application of the doctrine of laches depends upon the circumstances of each particular case. It is not mere lapse of time, but a change of situation during neglectful repose which renders it inequitable to afford relief. *O'Brien* v. *Wheelock,* 184 U. S. 450, 22 S. Ct. 354, 46 L. Ed. 636; *Milligan* v. *Milligan,* 145 Va. 184, 188, 133 S. E. 672; *National Valley Bank* v. *Fidelity Co.* * * *'"

In *Lyric Theatre Corporation* v. *Vaughan,* 168 Va. 595, 191 S. E. 600, it appears that in November, 1923, Sheri-

plainant denies that she had any intent and purpose, secret or otherwise, not to assume and perform all the duties and obligations of her marital relationship after her marriage to the said respondent. She avers that the said antenuptial agreement was not originated or conceived by this complainant, nor did she make any suggestion or demands as to the terms thereof; that the making of an antenuptial agreement was suggested and insisted on by the said respondent, and that its terms were proposed by him and accepted by the complainant as proposed. This complainant was informed by the said respondent, and believed, that his desire to have an antenuptial agreement was to protect and safeguard the interests of this complainant and assure her of a reasonable competence in the event of the death of the said respondent. This complainant is now advised that the real effect and purpose of the said antenuptial agreement was to limit and restrict the rights of this complainant in the property of the said respondent upon his death. This complainant avers that she was repeatedly told by the said respondent that he was lonely and needed and greatly desired companionship, and that his desire to have her marry him was primarily to secure her as a congenial and helpful companion to contribute to his general happiness, grace his home and provide for his comfort; that she is without sufficient knowledge or information to enable her to answer the other allegations of the said paragraph O, and so she neither admits nor denies the same, but calls for strict proof thereof, insofar as her interest may be affected thereby.

"13. This complainant denies the allegations of paragraphs P and Q of the said cross-bill.

dan executed his deed to Vaughan, Trustee. In 1927, Vaughan, Trustee, brought a suit for the construction of that deed and to sustain certain claims made by him. It was there said:

"Appellant also challenges the court's action in refusing to dismiss complainant's bill on the ground that the doctrine of laches should be applied in this case. The familiar rule regarding this doctrine is that equity will not lend its aid to enforce stale demands when by reason of the death of parties, loss of papers, loss of evidence or other circumstances, it is difficult to do justice between the parties. *Harrison* v. *Gibson*, 23 Gratt. (64 Va.) 212; *Kavanaugh's Adm'r* v. *Kavanaugh*, 98 Va. 649, 37 S. E. 275.

"While it is true that the instant suit could have been instituted earlier, there is nothing in the record to indicate that the circumstances would have been different

"14. Answering paragraph R of the said cross-bill, this complainant admits that she and the said respondent occupied the same residence and lived together as man and wife from the 10th day of March, 1937, until on or about the 17th day of November, 1937, and that on or about the 17th day of November, 1937, the said respondent left their home and then and thereafter acted and behaved all as alleged in full in paragraph 5 of the said bill of complaint of this complainant filed herein, reference to which is here made, and the said paragraph, by reference, is incorporated in this answer. Other than as stated in said paragraph 5, this complainant denies the allegations of said paragraph R of the said cross-bill.

"15. This complainant denies the allegations of paragraphs S and T of the said cross-bill.

"16. Answering paragraph U of the said cross-bill, this complainant admits that she is informed and believes that she is the record fee simple owner, subject to the life estate of the said respondent, of the two tracts of real estate conveyed to her by the said respondent as therein alleged, but denies that she has any idea or intention of either conveying, encumbering or disposing of the same, or any part thereof, during the pendency of this litigation.

"17. This complainant denies the allegations of paragraph V of the said cross-bill.

"18. This complainant denies all allegations of the said cross-bill which she has not hereinabove expressly admitted.

"Now, having fully answered the said cross-bill, this complainant prays that the same may be dismissed, that she may be granted the relief prayed for in her bill of complaint filed herein, and that she may recover her reasonable costs in this behalf expended."

from what they now are, had this been done. All the material parties are living, there has been no change in the circumstances and it is not shown that the delay has caused any injustice.''

██ A condition in which situations are changing or one in which there could be no change calls for prompt repudiation, if repudiation is to be sought at all.

Where a tenant covenants not to sublet and breaches that agreement, his landlord should move promptly, if at all. Plainly it would be inequitable for him to stand by while the subtenant was seeding and later forbid him to harvest. *Deaton* v. *Taylor*, 90 Va. 219, 17 S. E. 944.

One who, under warranty of soundness, bought a horse which, upon delivery, had but one eye should act with promptness, if he intended to act at all; for that condition could not possibly change thereafter.

██ ██ In determining whether the doctrine of laches should be applied we look to the facts. Promptness is at times necessary, but this rule should not be strictly applied where delay has done no harm, where conditions have not changed and where it is possible to completely restore the parties to their antecedent rights. The parties here may be placed practically *in statu quo*—a thing which would be impossible if the marriage had been followed by cohabitation. Long on Domestic Relations, *supra*.

One who found that his wife was unresponsive or reluctant, and to whom he was deeply attached, might hope by manifestations of patience and tenderness to win her over; and that would be to his credit and not to his discredit. Certainly arbitrary insistence upon immediate acquiescence would be both harsh and unreasonable.

This is the situation with which we have to deal. No evidence has been lost, property rights are as they were, and delay has done no harm.

During the engagement Mrs. Story told Mr. Pretlow that she had some obligations in the Merchants & Farmers Bank amounting to $600 or $700, which caused her

some embarrassment. He then said to her: "Well, I will relieve that; if that is all the trouble, I will pay that, if it is embarrassing you." That was when they were first engaged. He went to the bank, was told that the amount due was $1,128.57, and because "I felt it was a matter too small to break up the marriage on, and I was very much interested, and so I passed it up and gave Sol check for $1,128 and some cents." It can not be doubted that he made this payment because he thought that a refusal might break up the marriage. The inducing cause was her promise to marry him, just as that promise brought about the marriage settlement.

"If an intended husband make a present, after the treaty of marriage has been negotiated, to his intended wife, and the inducement for the gift is the fact of her promise to marry him, if she break off the marriage, he may recover from her the value of such present," quoted and relied upon in *Lumsden* v. *Arbaugh*, 207 Mo. App. 561, 227 S. W. 868. See also 12 R. C. L. 951; *Schultz* v. *Duitz*, 253 Ky. 135, 69 S. W. (2d) 27, 92 A. L. R. 600, and extended note.

The marriage, as we have seen, was one but in form and was in fact no marriage at all.

The court ordered that "the respondent pay all of the costs of this cause, including a fee of $1,500.00 to Savage & Lawrence, counsel for complainant, for their services rendered to complainant in this cause, and the sum of $200.00 to James G. Martin, IV, for his services as guardian *ad litem* in this cause, and the sum of $20.00 each to Drs. R. L. Payne and W. B. Martin for their services in testifying herein as expert witnesses on behalf of complainant; * * * ." It also directed that $200.00 a month, temporary alimony, be paid to Mrs. Pretlow. It will be noted that the allowance to counsel for complainant was for "services rendered". Allowance should also be made for their services on appeal, and for that it is ordered that they be paid by Mr. Pretlow the sum of fifteen hundred dollars.

Counsel have also paid out $250.00 in expenditures proper and necessary during the pendency of this litigation. Mr. Pretlow should repay to them that sum. He should also pay all court costs.

We find no error in the decree of April 29, 1940, it being that appealed from. It is affirmed.

*Affirmed.*

Campbell, C. J., and Gregory, J., dissenting.