## CIRCUIT COURT OF FREDERICK COUNTY

Marsha Leigh Green Pifer

v.

William E. Pifer, Jr.

### August 23, 1975

### Case No. (Chancery) 1865

By JUDGE ROBERT K. WOLTZ

Complainant who sues by her next friend, was a seventeen-year-old high school junior. Defendant was a nineteen-year-old employed high school graduate. Both lived at the homes of their respective parents. They had intentions of becoming married, but not until after the complainant had completed high school in June, 1976.

Their plans changed. Some time in March of 1975 the complainant suspected that she was pregnant, and as a consequence the parties decided to get married without waiting for her to complete high school. In furtherance of the plan and because the complainant needed parental consent for issuance of a Virginia marriage license, Section 20-48, Code of 1950 (1974 Cum. Supp.), the defendant made application for a marriage license at Hagerstown, Maryland. To get the license it was necessary that he make false application to show that the age of the complainant was eighteen.[1] This he did with the knowledge and acquiescence of the complainant.

___

[1] Complainant admits Maryland law requires parental consent to obtain a marriage license for one under eighteen.

On March 22nd, 1975, the marriage ceremony was performed at Hagerstown in pursuance of their Maryland license. The parties returned promptly thereafter to Clarke County where each continued to live as before at the homes of their respective parents, and have continued so to live.[2] Complainant's parents learned of the ceremony six days later and three days after that her mother took the complainant to an obstetrician. The obstetrician has not testified in these proceedings, but based on hearsay he confirmed the pregnancy and was of the opinion that the complainant could not carry the child to full term, that she was approaching a miscarriage, and that it would not be wise from the standpoint of her health to try to carry the child to full term. Two days after this obstetrical examination the complainant had a miscarriage. Two days later, by her mother as next friend, the complainant instituted this suit for annulment, the bill of complaint alleging "The marriage license for said ceremony was procured by fraud, and the parties entered into said marriage ceremony as a result of fraud, duress, and mutual mistake of fact." The defendant filed his answer on the same day admitting the allegations of the bill and joining in its prayer that the marriage be declared null and void.

In her deposition the complainant stated that she would not have gone through the marriage ceremony had she at that time known of her inability to carry the child so as to give it birth, and in response to a leading question that this "mistake of fact" as to her true condition "forced" her into the decision to get married at the time she did.

The complainant argues that the Court has equity jurisdiction to annul marriages for fraud and mistake. The fraudulent misrepresentation of complainant's age in obtaining the marriage license, the lack of consent of her parents to the marriage, the alleged mistake of fact, being forced into the ceremony by mistaken belief respecting the prospective birth of a child, the hasty actions of the parties without determining the true situation in

---

[2] The questions in the depositions refer to cohabitation, and none was asked specifically as to consummation of marriage after the ceremony.

that regard, acting contrary to their true desires, the avoidance of cohabitation by the parties after the ceremony and the very prompt legal action taken by the complainant are, argues the complainant such an "accumulation of facts and circumstances" as to provide the Court with a basis to exercise its jurisdiction to grant the annulment prayed for.[3]

The jurisdictional facts of residence and domicile and of venue, §§ 20-97 and 20-98 are duly proven in this case, and the Court has express statutory jurisdiction over suits for annulling marriages, § 20-96.

Code § 20-89 grants jurisdiction for annulling marriages in certain statutory instances, for example, incestuous marriages and bigamous marriages. But in Virginia, at least, jurisdiction to annul marriages exists not only by statute, and such statutes do not oust chancery courts from their general equitable jurisdiction over annulment on other grounds such as fraud and duress. *Pretlow v. Pretlow*, 177 Va. 524 (1941).

General equity jurisdiction does confer authority to rescind and cancel contracts on the grounds of fraud, mistake, incompetency, duress and the like, and while marriage does involve a contract, nevertheless the rules with reference to rescission and cancellation of contracts generally are not as a consequence automatically applicable or applied in the same way to marriage contracts. This is because of "the nature of the marriage relation and for reasons of sound public policy." *Needham v. Needham*, 183 Va. 681 (1945); 4 Am. Jur. 2d, *Annulment of Marriage* sect. 60. *Needham* further holds that the public policy of Virginia, except in the case of marriages prohibited by law, is to uphold the validity of marriages. In annulment suits, specifically, the presumptions are in favor of the validity of the marriage. 4 Am. Jur. 2d, *Annulment of Marriage* § 83.

---

[3] Complainant, while not asserting that they apply to this case, points to action of the 1975 General Assembly becoming effective June 1, 1975, as Section 20-45.1 of the Code, declaring marriages of those of an age requiring parental consent void if such consent is not had. Before this recent enactment, there was no statute declaring such marriages void or voidable. Needham v. Needham, 183 Va. 681 (1945).

In addition, *Needham* sets forth certain common law rules applicable to marriages by infants. The marriage of an infant under the age of consent was voidable at the election of the party under age, but if the infant were over the age of consent, the marriage was valid. In the case of a minor over the age of consent, which is the situation of this complainant, parental consent was not essential to the validity of the marriage. The case further holds that minors over the age of consent have capacity to enter the marriage relation and that such a marriage is "a permissible status" rather than merely the contract of an infant.

Thus the Court is faced with a marriage which is not illegal and is presumptively valid. The avoidance of it must rest on fraud, mistake or duress as alleged, or, as argued, on a concatenation of events involving them in whole or in part.

The first ground of avoidance alleged is fraud. A marriage contract, especially where it is partly executory as where it has not been consummated may be cancelled for any fraud which would render other types of contracts void. *Pretlow v. Pretlow, supra.* The only fraud which appears is in the application for and issuance of the marriage license by the defendant giving a false age for the complainant. The complainant had knowledge of this fraud and participated in it at least constructively.

Such facts call into play the doctrines of "clean hands" and *in pari delicto.* The resulting marriage emanated from the complainant's own fraud, and she does not have clean hands and is in equal fault with the defendant as to whom she requests nullification of the contract between them. The marriage will not be annulled on this ground as one cannot maintain an annulment suit based on his own fraud. *Heflinger v. Heflinger*, 136 Va. 289 (1923).[4]

The next ground for annulment is mistake. While mutual mistake of fact is a recognized basis for setting aside contracts generally, research has not disclosed that specific ground being used in the case of annulment.

---

[4] In Heflinger, however, these doctrines were not applied in a suit to annul a marriage of a type specifically forbidden by law. The doctrines were declared "subservient" to the public policy forbidding such marriages.

The mistake alleged is that the parties were induced to enter into the marriage under the erroneous belief that the fetus would be born, whereas had they known that it was to be aborted they would not have contracted the marriage. It is perhaps unimportant to the legal results here whether by the exercise of some diligence the latter medical fact could have been determined or not.

The real factor resulting in the marriage would appear to be the complainant's pregnancy, and that was a fact. Among others, procreation and establishing a home for and the nurture of progeny are important features of the vast majority of marriages and consistent with matrimony, and efforts to legitimize a child yet to be born is consonant with contracting marriage.

There being no inconsistency between the objectives sought by the parties and the form and substance of the contract entered into by them to attain one or more of those ends, the most which can be said is that there may have been a mistake or error of judgment, due to an unforeseen circumstance, which the complainant may now regret. But such mistakes are not uncommon to contracts generally and marriage contracts are certainly no stranger to them. If such mistakes were in legal contemplation, mistakes of fact for which a contract could be avoided, then scarcely no contract involving the risk of facts and events not foreseen--which is particularly inherent in the marital state--would be safe from attack or being set at naught.

Even standing naked of any precedent known to it on the precise point, this Court makes bold to say had the parties gone through the nuptial ceremony under and induced by a wholly erroneous belief that the complainant was pregnant, no legally cognizable mistake of fact justifying rescission and cancellation of the marriage bonds would exist in this State. Her public policy views with too great a gravity the entry into matrimony to countenance such a result. With how much more force can the same be said under the facts of this case.

The last individual ground asserted for annulment is duress. A ready inference from the evidence of the case is that pressures of a social nature played a part in the course of action which the plaintiff chose to take. But these inferences are only as to a duress, if

it can be called that, of social circumstance. The evidence gives rise to no inference that any person exercised unconscionable influence over the complainant's mind, whereby as a result she participated in the ceremony of marriage against her own will. On the contrary, the persuasive inference is that while she may have much preferred to delay marriage by some months, all things considered, she preferred the course which she took and in pursuing it was giving rein to self-expression and did not express merely the will of another imposed upon her.

Finally, the complainant argues that the whole bundle of circumstances interconnected as they are give such weight as to justify an annulment. "The power of annulment is to be exercised with caution, and only where the grounds alleged are sustained by clear, distinct, and satisfactory evidence; or, as is frequently said, the proof in an annulment case must be clear and convincing. . . Where the case is uncontested it is particularly incumbent upon the trial court to satisfy itself fully that the plaintiff has sustained the burden of proving a cause which vitiated the marriage. . ." 4 Am. Jur., *Annulment of Marriage* sect. 83. The case at bar is not only uncontested, the defendant admits the allegations and joins in the prayer for relief. Actuated by a sympathy for the parties and understandable parental concern, the Court has scrutinized the record closely, made diligent search of legal authority and reflected over maturely upon this matter. In the end, the burden of proof has not been borne in support of any legal theory put forward justifying annulment in this case.

Though the defendant had reached his majority, language from the *Needham* case is appropriate: "No law has sufficed to prevent marriage between minors. They still come together matrimonially, heedless of any law. . . The governing power are the impulses of nature, human frailty, and love. The question before the law-making power is not whether such unions are wise or foolish, but whether they shall be accorded a legal status or held as meretricious . . ." It is not up to the Court to blot out the arrangement which these parties entered into unless the way to that result can be seen clearly in law and in fact. In *Jacobs v. Jacobs*, 184 Va. 281 (1945), a case in which an annulment was denied, the Supreme Court said, "Courts do not exist to guarantee happy and successful marriages, or to annul and cancel

the effect of mere errors of judgment in the making of contracts of marriage. In the absence of fraud, duress or other improper elements affecting such transactions, no relief can be granted."

Finding no such improper elements, the prayer for relief is denied.